Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Jun 25 2014, 11:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS C. ALLEN**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF D.H. (Minor Child) and | ) ) ) ) | |
| M.H. (Father), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 02A03-1311-JT-462 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause No. 02D08-1305-JT-29

**June 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

M.H. ("Father") appeals the trial court's involuntary termination of his parental rights

to his child, D.H.  We affirm.

## Facts and Procedural History

In its termination order, the trial court made the following factual findings:

> 2.  [Father is the legal father of D.H., who was born on May 7, 2012.]
>
> 3.  A Preliminary Inquiry was held in the Child In Need of Services case 02D08-1205-JC-159 on May 11, 2012.
>
> 4.  A Factfinding Hearing was held in the underlying Child in Need of Services case. The court adjudicated the child a Child in Need of Services (CHINS) based on the findings that:
>
>> a.  The mother's intellectual limitations have affected her ability to provide the child with necessary care and shelter.
>>
>> b.  The father is without housing and has a history of domestic violence; and alcohol use; and,
>>
>> c.  At the time of the child's birth the mother and father had not secured appropriate items for the care of an infant.
>
> 5.  A Dispositional Decree was entered on August 8, 2012, and the child was placed in licensed foster care. The Respondent parents' contact with the child was restricted to supervised visits.
>
> ….
>
> 7.  Father was … placed under a Parent Participation Plan ["Plan"].  He was ordered to:
>> a.  Refrain from all criminal activity;
>> b.  Maintain clean, safe, and appropriate housing at all times;
>> ….
>> d.  Cooperate with all caseworkers, and Guardian ad Litem or CASA;

2

e.  Attend all case conferences as directed; maintain contact with the Department, and accept announced and unannounced home visits by all caseworkers, the Guardian ad Litem or CASA;

....

k.  Enroll in drug and alcohol counseling at Caring About People, Inc. by September 8, 2012, attend all sessions, and successfully complete the counseling program.

l.  Enroll in parenting classes at SCAN by September, 8, 2012, attend all sessions, and successfully complete the program.

....

n.  Submit to random urinalysis testing, drug screens, and/or oral swabs as required by ["DCS"] caseworkers and refrain from use of alcohol, illegal drugs, and other substance abuse.

o.  Attend and appropriately participate in all visits with your child as directed.

p.  Attend all medical and health care appointments for [D.H.] and follow all recommendations by [D.H.'s] medical and health care providers.

q.  Enroll in and successfully complete Sexual Offender Treatment with Family and Children's Services.

8.  A Review Hearing was held on October 17, 2012, and the Court found that …. [Father] had not enrolled in therapy and had not completed parenting classes.  [Father] tested positive for the use of illegal substances.

9.  On April 10, 2013, a Permanency Hearing was held and the Court found that …. [Father] had not enrolled in home based services.  A Permanency Plan for the termination of parental rights and adoption was adopted by the Court.

10.  In the present underlying CHINS case, the child has been placed outside the care of [Father] for a period of more than six (6) months since the entry of the Disposition Decree.

....

12.  Dr. David Lombard diagnosed [Father] with bipolar disorder, substance abuse disorder, and personality disorder NOS (with antisocial and

3

paranoid traits). Dr. Lombard and the Court find[] that his condition places him at "high risk for emotional abuse and neglect of children."

13. The Respondent parents['] functioning and psychological conditions as identified by Dr. Lombard were evident at the onset of the underlying CHINS case. [DCS] case worker, Eric Zent, met with the mother and father at the hospital when the child was born. From his testimony, the Court finds that the mother was unable to advise him what she had at her home in preparation for the baby's birth. In fact neither parent had secured a crib, car seat, formula, or other essential items. ….

14. [DCS] made a referral for parenting assistance to SCAN's Parents and Partner's [sic] program. From the testimony of former SCAN restoration worker Laura Leffers, the Court finds that the father has trouble completing basic parenting skills. He required prompting to prepare a bottle, to calm the child, and to change a diaper. She prepared a "flip book" as a resource to remind him of the steps required to complete each skill. However, he did not use it. She concluded, and the Court finds that [Father] was not able to adapt and meet the child's needs.

….

18. [Father] did not enroll in a drug and alcohol counseling or a sex offender treatment program. From the testimony of [DCS] case manager, Mary Lane, the Court finds that the father admitted on multiple occasions that he uses marijuana and that he drank alcohol daily.

19. From the testimony of SCAN caseworker, Megan Booker, the Court finds that the father did not successfully complete his parenting classes.

Appellant's App. 6-10 (citations to exhibits omitted).

Based on its findings, the trial court concluded, among other things, that termination of both Father's and mother's parental rights was in D.H.'s best interests. Father now appeals.

## Discussion and Decision

"The purpose of terminating parental rights is not to punish parents but to protect their children." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Parental rights are not absolute and must be subordinated to the child's best interests in determining the proper disposition of a petition to terminate parental rights. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). "Parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.*

Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship must allege:

(A) that one (1) of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

5

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

The State must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009).

We apply a two-tiered standard of review when reviewing a trial court's findings of fact and conclusions thereon. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the judgment. *Id.* A trial court's judgment will be set aside only if it is clearly erroneous. *D.D.*, 804 N.E.2d at 265. A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

Father does not challenge the trial court's findings but rather its conclusion that termination is in D.H.'s best interests. In determining whether termination is in the child's best interests, the trial court must look at the totality of the evidence. *Id*. at 267. In so doing, the trial court must subordinate the parent's interests to those of the child involved. *Id.* "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the

6

parent-child relationship is in the child's best interests." *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied.* The testimony of the service providers may support a finding that termination is in the child's best interests. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010).

Father argues that termination of his parental rights is not in the best interests of D.H. because he has complied with portions of the Plan. He contends that he has maintained phone contact with DCS, visited with D.H., and completed both a 24-Hour Dad Program and a psychological exam. Father also contends that he has stability in housing and has not been arrested for any crimes.

Here, Father's stability in housing is living with his mother. Father has not complied with the Plan's requirement that he "accept announced and unannounced visits by caseworkers, the Guardian ad litem or CASA." Appellant's App. at 8. Because Father's mother has not allowed such visits, whether he maintains "clean, safe, and appropriate" housing is unknown. *Id.* Although Father claims that he has visited D.H., he was often put on "hold" for visitations because of his frequent absences. Tr. at 40-42. In *Lang v. Starke County Office of Family and Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied,* we stated that a lack of commitment is shown in the relationship when the parent fails to exercise his visitation rights.

Father also has a history of substance abuse and psychological disorders. Father has not been arrested, but he has reported that he used marijuana. The supervisor at the visits testified that Father would come intoxicated and smelling like alcohol. She also testified that

7

she was afraid that he would fall asleep and drop the child. Moreover, Father failed to comply with the Plan by not enrolling in a drug or sex offender treatment program.

Under the Plan, Father was to attend all of D.H.'s medical appointments. However, Father missed D.H.'s surgery because he had gone drinking the night before and fell asleep in an alley. Father was given a parenting awareness skill survey, which indicated that he would be highly ineffective in parenting and at high risk for emotional neglect of a child. Also, he did not successfully complete the eight-week parenting program. The DCS case manager and D.H.'s guardian ad litem testified that termination would be in D.H.'s best interests. Based on the foregoing, we cannot say that the trial court's conclusion regarding D.H.'s best interests is clearly erroneous. Therefore, we affirm the termination order.

Affirmed.

BAKER, J., and BARNES, J., concur.