## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 29 2017, 10:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of:<br><br>S.H., Minor Child,<br><br>and,<br><br>B.H., Father,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner.* | June 29, 2017<br><br>Court of Appeals Case No. 21A05-1612-JT-2793<br><br>Appeal from the Fayette Circuit Court<br><br>The Honorable Beth A. Butsch, Judge<br><br>Trial Court Cause No. 21C01-1603-JT-84 |

**Barnes, Judge.**

# Case Summary

B.H. ("Father") appeals the termination of his parental rights to his daughter S.H. ("Child").[1]  We affirm.

# Issue

The sole issue Father raises is whether his counsel rendered ineffective assistance during the termination of parental rights hearing.

# Facts

Child was born to Mother in May 2014.  It appears that, shortly after Child's birth, the Department of Child Services ("DCS") filed a petition alleging Child to be a child in need of services ("CHINS") because of Mother's alleged

---

[1] M.B., Child's mother ("Mother") does not participate in this appeal.  She voluntarily terminated her parental rights to Child.

substance abuse problems. On September 3, 2014, the juvenile court adjudicated Child a CHINS. Father was identified as Child's father, paternity was eventually established, and the court awarded Father custody of Child. The CHINS case was closed on February 25, 2015, subject to an agreement that Father would not allow Child to be in Mother's care while she was under the influence of drugs.

[4] In August 2015, the police were called because Mother was seen at a local business under the influence of illegal drugs while Child was in her care. Apparently, Father had allowed Mother to have parenting time with S.H. without ensuring that Mother was not under the influence of illegal drugs. Mother was arrested. DCS filed a second CHINS petition and removed Child from Father's custody. The juvenile court held an initial/detention hearing on August 19, 2015, at which Father admitted that he was homeless; he had not been employed for approximately two years; and he recently had used heroin. Child was adjudicated a CHINS and placed in a foster home.

[5] On September 21, 2015, following a dispositional hearing in the CHINS matter, the court ordered Father to among other things notify DCS of changes in his address and of any arrests and criminal charges; keep all appointments with DCS, service providers, and Child's court appointed special advocate ("CASA"); maintain appropriate housing; secure and maintain legal and stable employment; not use illegal drugs; obey the law; complete a psychological evaluation and parenting assessment and follow all recommendations for further services; complete a substance abuse assessment and follow all

recommendations for treatment; submit to random drug screens; and attend all scheduled visitations with Child. Father did not participate in any services, did not attend substance abuse treatment, and did not remain in contact with DCS.

[6] In January 2016, DCS made referrals for services for Father, including referrals for substance abuse assessment. The DCS family case manager ("FCM") offered to transport Father to service providers. Father sent one text message to the FCM stating that he "really wanted help." Tr. p. 32. After receiving the text message, the FCM had no further contact with Father.

[7] At the end of January 2016, Father was arrested and incarcerated on a theft charge. Father pled guilty, was sentenced, and was released in August 2016. During Father's incarceration, the FCM was supportive of Father's release from incarceration to attend services, but Father's CHINS and criminal lawyers could not reach an arrangement for Father to be able to participate in the services.

[8] DCS filed its termination petition on March 23, 2016. The juvenile court held an initial hearing on May 18, 2016, and Father appeared in the custody of the Fayette County Sheriff. At the initial hearing, Father told the court that he did not want an attorney appointed to represent him. Following the initial hearing, the court entered Father's denial of the allegations and ordered Father to inform the court, DCS, and any appointed counsel of any changes in his address.

[9] The juvenile court set the termination fact-finding hearing for August 23, 2016. On August 18, 2016, however, DCS moved the court to continue the

termination fact-finding hearing and requested the court appoint Father an attorney because the CASA informed DCS that "Father appears confused by the proceedings . . . ." Appellant's App. Vol. II p. 31. The court continued the termination fact-finding hearing to October 25, 2016, and ordered Father to appear at the hearing. At a pretrial conference held on August 24, 2016 (at which Father appeared in the custody of the Fayette County Sheriff), the court appointed counsel for Father, and Father was provided with counsel's business card.

[10] Father was released from incarceration on August 26, 2016. The FCM attempted to contact Father at his last known address. She also called the jail, the probation office, and other telephone numbers provided to her, but she could not reach Father. Father's appointed attorney filed his appearance in the termination matter on October 12, 2016.

[11] At the fact-finding hearing on October 25, 2016, Father did not appear, but his appointed attorney was present. When the court asked about Father's nonappearance, Father's counsel informed the court that he "never did hear from [Father]," and that he sought help from the jail and DCS to locate Father, but both the jail and DCS were unaware of Father's whereabouts. Tr. p. 27.

[12] The court proceeded with the fact-finding hearing. DCS offered into evidence twenty exhibits, including orders from Child's CHINS proceedings, orders from a CHINS proceeding that involved Father's and Mother's other child, A.H., and pleadings from Father's criminal cases. Father's counsel did not raise any

objections to the exhibits, but instead reviewed the exhibits and stipulated to their admission into evidence.

[13] The FCM testified at the hearing that, per the dispositional order from the second CHINS proceeding, Father was supposed to attend substance abuse treatment and participate in case management services and supervised visits. The FCM further testified that Father did not attend substance abuse treatment and did not participate in any services; he did not try to visit Child; he did not remain in contact with DCS; he was incarcerated from January 2016 to August 2016; and he was not able to maintain permanent housing or employment. The CASA testified that she had concerns about Father's ability to parent Child because of Father's "past history of drug use[,]" "[h]is lack of compliance[,]" and "his lack of visits with the child [sic] to my knowledge he has not visited her at all since she's been in placement so there's no bond that is built there with that child." *Id*. at 38-39. Father's counsel did not cross-examine the witnesses.

[14] On November 15, 2016, the court entered findings of fact and conclusions of law terminating Father's parental rights to Child. Father now appeals.

## Analysis

[15] Although we acknowledge that the parent-child relationship is "one of the most valued relationships in our culture," we also recognize that "parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights."

*Bester v. Lake County Office of Family & Children,* 839 N.E.2d 143, 147 (Ind. 2005) (internal quotations omitted). The involuntary termination of one's parental rights is the most extreme sanction a court can impose because termination severs all rights of a parent to his or her children. *See In re T.F.,* 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied.* As such, termination is intended as a last resort, available only when all other reasonable efforts have failed. *Id.* The purpose of terminating one's parental rights is not to punish the parent, but rather to protect the child. *Id.*

[16] A parent in a proceeding to involuntarily terminate the parent-child relationship is entitled to representation by counsel. Ind. Code §§ 31-32-2-5, 31-32-4-1. Where parents whose rights were terminated claim on appeal that their lawyer underperformed, the focus of the inquiry is whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination. *Baker v. Marion County Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004). The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest. *Id*.

[17] Father claims his counsel was ineffective for three reasons: 1) counsel failed to ask the juvenile court for a continuance of the termination fact-finding hearing when Father did not appear; 2) counsel failed to cross-examine DCS's witnesses or make any argument on Father's behalf; and 3) counsel raised no objections

to exhibits DCS offered for admission into evidence. Father argues that his counsel entered his appearance in the termination cause just two weeks prior to the fact-finding hearing and that counsel did not contact Father's probation officer to determine Father's whereabouts. [2]

[18] We are troubled by the fact that, aside from answering questions posed by the court regarding Father's whereabouts and reviewing and stipulating to the admission of DCS's exhibits, Father's counsel's participation in the termination fact-finding hearing was minimal. Counsel did not offer objections, any cross-examination, or a closing statement. Despite Father's lack of attendance at the hearing, counsel could, and perhaps should, have requested a continuance, cross-examined the witnesses, objected to the admission of exhibits, and offered a closing statement, even if it was doubtful the outcome of the termination case would have been different. Ultimately, however, the record reveals that counsel made multiple attempts to locate Father. Although it appears counsel did not contact the probation office, the FCM testified that she did contact the office to try to locate Father but was unsuccessful. Nothing in the record indicates that seeking a continuance would have increased the likelihood that Father would have been located.

---

[2] Father also alleges that a conflict of interest existed between the lawyers who represented Father and Mother in their CHINS and respective criminal proceedings, and that because of the "conflict of interest," Father "was unable to take advantage of an opportunity the FCM had arranged for [Father] to be released from jail so he could begin completing services." Appellant's Br. p. 10. Because Father does not develop this allegation, we decline to address it.

[19]     Regarding the witnesses' testimony and the DCS's exhibits, Father, on appeal, does not challenge any specific testimony or exhibits offered by DCS at the fact-finding hearing, and he does not challenge the sufficiency of the evidence supporting the trial court's termination order. *See Madlem v. Arko,* 592 N.E.2d 686, 687 (Ind. 1992) (providing that when an appealing party fails to challenge the findings of the trial court, the findings must be accepted as correct). Father does not indicate how the outcome of the termination hearing could have come to a more favorable result had his counsel offered objections. *See Lang v. Starke County Office of Family & Children*, 861 N.E.2d 366, 376 (Ind. Ct. App. 2007), *trans. denied.*

[20]     In addition, there was substantial evidence before the juvenile court to indicate the conditions leading to the removal of Child from Father's care were unlikely to be remedied and termination of parental rights was in the best interests of Child, and Father does not point to anything to show that he received a fundamentally unfair hearing. At the initial hearing for the second CHINS proceeding, Father admitted to being homeless, unemployed, and an illegal drug user. The juvenile court ordered Father to among other things notify DCS of changes in his address, maintain appropriate housing, secure and maintain legal and stable employment, not use illegal drugs, obey the law, participate in case management services, attend substance abuse treatment, and attend all scheduled visitations with Child. Father did not participate in any services, did not attend substance abuse treatment, and did not remain in contact with DCS. Father was incarcerated from January 2016 to August 2016 for a Level 6 felony

theft conviction. Father had not obtained permanent housing or employment. He did not ask to visit with Child, and he had not visited with Child since Child was removed from his custody. Child was placed in a pre-adoptive foster home in August 2015, where she is thriving.

Although counsel's representation of Father was not textbook, applying the standard set forth by our supreme court in *Baker*, we find that counsel's representation of Father was not so defective as to undermine our confidence in the juvenile court's determination to terminate Father's parental rights to Child. Thus, Father received effective assistance of counsel and a fundamentally fair trial. Based on the evidence presented at the termination hearing, we agree with the juvenile court's decision that the conditions leading to Child's removal from Father's care were unlikely to be remedied and termination of Father's parental rights was in the best interests of Child.

## Conclusion

Father received effective assistance of counsel and a fundamentally fair hearing. The order of the juvenile court terminating Father's parental rights to Child is affirmed.

Affirmed.

Baker, J., and Crone, J., concur.