# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 19 2018, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Catherine S. Christoff
Christoff & Christoff Attorneys
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Involuntary Termination of the Parent-Child Relationship of: P.L., C.B.(1), C.B.(2), K.P., and D.R. (Minor Children),

and

P.M.L. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

July 19, 2018

Court of Appeals Case No. 18A-JT-456

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

Trial Court Cause Nos.
02D08-1705-JT-100
02D08-1705-JT-101
02D08-1705-JT-102
02D08-1705-JT-103
02D08-1705-JT-104

**Baker, Judge.**

[1] P.M.L. (Mother) appeals the trial court's order terminating her relationship with P.L., C.B.(1), C.B.(2), K.P., and D.R. (collectively, the children), her minor children. Mother argues that there is insufficient evidence supporting the termination. Finding the evidence sufficient, we affirm.

# Facts

[2] On September 29, 2014, the children were removed from Mother's care and custody after Mother left then-three-year-old D.R. at home alone, marijuana paraphernalia was found in the home, and Mother was arrested. The Department of Child Services (DCS) filed a petition alleging the children to be children in need of services (CHINS) on October 1, 2014.

[3] On October 27, 2014, Mother admitted that the children were CHINS based on the following: (1) Mother left three-year-old D.R. at home alone for hours; (2) Mother sped away from law enforcement, driving around a stopped school bus that was letting children, including her own, off of the bus; (3) Mother was arrested and ultimately pleaded guilty to resisting law enforcement, criminal recklessness, reckless driving, and operating a vehicle without a license; (4) there were marijuana blunts and paraphernalia in the home in reach of the children; and (5) Mother smokes marijuana. At the dispositional hearing, the trial court ordered Mother to submit to a diagnostic assessment and a substance abuse assessment and comply with any recommendations; participate with home-based case management; submit to random drug screens; and attend supervised visitation with the children.

[4]     Mother completed a diagnostic assessment and a substance abuse assessment. It was recommended that she participate in individual counseling, random drug screens, and home-based case management. Shortly thereafter, Mother moved to Chicago. DCS referred her services to a nearby location, but she never followed up to initiate the services.

[5]     Mother had "an abundance of no-shows" at the provider that administered her random drug screens. Tr. Vol. II p. 167. She submitted to screens through DCS after court hearings and sporadically at other times, continuing to test positive for marijuana throughout the case.

[6]     Mother's visits with the children were inconsistent. When she attended, the visits were chaotic, Mother failed to discipline the children, and Mother frequently made negative comments about the children's foster parents. In July 2015, the visits became therapeutically supervised visits because of Mother's behavior. After Mother failed to attend multiple therapeutically supervised visits, the service was closed because it was stressful to the children that they expected to see Mother but she failed to show. Between October 2014 and June 2016, Mother attended only sixteen visits and had multiple no shows. Mother's last visit with the children occurred in October 2016. The children did not express a desire to visit with anyone outside of their sibling group.[1]

---

[1] C.B.(1), C.B.(2), and K.P. were placed in the same foster home. P.L. and D.R. were placed together in a different foster home.

[7] In June 2016, Mother's services were transferred to another provider to better accommodate her geographical location—she lived in Chicago and was employed in Merrillville. She began working with a home-based case manager, who met with Mother in Merrillville at her place of work. Mother was initially motivated to participate, but her attendance became sporadic and she eventually stopped participating altogether. In May 2017, Mother contacted the home-based case manager and asked to restart the service. Mother met with the case manager once and then stopped participating again; the service was closed as unsuccessful.

[8] During the underlying CHINS case, Mother's housing was unstable. She had sporadic periods of homelessness, moved between Fort Wayne and Chicago multiple times, and often lived with different relatives. At the time of the termination hearing, Mother was living in a one-bedroom apartment in Chicago. Her employment was also inconsistent. At one point during the CHINS case she was employed at a nursing home and a restaurant, but at the time of the termination hearing, she had been unemployed for months.

[9] On June 1, 2017, DCS filed a petition to terminate Mother's parental rights. The termination hearing took place on November 6 and 8, 2017. At that time, all the children were thriving in their respective foster placements. The Family Case Manager (FCM) and the children's Court Appointed Special Advocate (CASA) each testified that they believed termination was in the children's best

interests. On February 7, 2018, the trial court issued an order terminating

Mother's parental rights. Mother now appeals.[2]

# Discussion and Decision

## I. Standard of Review

Our standard of review with respect to termination of parental rights
proceedings is well established. In considering whether termination was
appropriate, we neither reweigh the evidence nor assess witness credibility.
*K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will
consider only the evidence and reasonable inferences that may be drawn
therefrom in support of the judgment, giving due regard to the trial court's
opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial
court entered findings of fact and conclusions of law, we will not set aside the
findings or judgment unless clearly erroneous. *Id.* In making that
determination, we must consider whether the evidence clearly and convincingly
supports the findings, and the findings clearly and convincingly support the
judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing
evidence that the child's emotional and physical development are threatened by

---

[2] The parental rights of the father of C.B.(1) and C.B.(2) were also terminated; he is appealing in a separate cause. The parental rights of the father of D.R. were also terminated; he is appealing in a separate cause. The parental rights of K.P.'s father were terminated, but he did not appeal. The identity of P.L.'s father was unknown at the time of termination.

the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[11]     Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A)     that one (1) of the following is true:
>
> > (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
> >
> > (ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> >
> > (iii)     The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B)     that one (1) of the following is true:
>
> > (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

[12] Mother argues that there is insufficient evidence supporting the trial court's findings that (1) there is a reasonable probability that the conditions resulting in the children's removal will not be remedied; and (2) termination is in the children's best interests.

## II. Conditions Resulting in Removal

[13] Mother first argues that the evidence does not support the trial court's conclusion that there is a reasonable probability that the conditions that resulted in the children's initial removal and continued placement outside her care and custody will not be remedied.

[14] The children were initially removed from Mother's care and custody because of her arrest, her decision to leave three-year-old D.R. at home alone for hours,

and the drug paraphernalia found in the home in reach of the children. They have continued to be placed outside of her care and custody because of her failure to comply with court-ordered services, inconsistent visitation with the children, and instability in housing and employment.

[15] The record reveals that Mother failed to successfully complete any of her court-ordered services, including random drug screens, home-based case management, and individual counseling. When Mother did provide drug screens, they were regularly positive for marijuana. She did not consistently visit with the children. Indeed, at the time of the termination hearing, she had not seen them for over a year. It is apparent that despite years to do so, Mother has not addressed any of the underlying issues in this case. This evidence readily supports a conclusion that there is a reasonable probability that the conditions that resulted in the children's initial and continued removal from Mother's care and custody will not be remedied. *See Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) (holding that a "pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged condition, will support a finding that there exists no reasonable probability that the conditions will change").

[16] Mother argues that her geographical location—in Chicago, a three-hour drive away from where the children lived in Fort Wayne—made "both visits with her children and completion of services difficult." Appellant's Br. p. 23. She argues that as in *In re B.L.P.*, 91 N.E.3d 625, 633 (Ind. Ct. App. 2018), we

should find that termination is unwarranted where it was based on the facts that "a parent lives out of state, works full-time, and cannot afford to fly to another state and home again in the same day . . . ." As in *B.L.P.*, Mother insists that she is being punished for her "geographic location and economic wherewithal." *Id.*

[17] We find *B.L.P.* to be distinguishable. Here, unlike in *B.L.P.*, DCS made every effort to transfer Mother's services to a geographically convenient location. She still failed to participate consistently. And we acknowledge that although a multiple hour drive to visit with the children is challenging to do regularly, she could at least have done so occasionally. At the time of the termination hearing, she had not seen her children for over a year. Whereas in *B.L.P.* the father lived in Georgia, meaning that travel was a major (and expensive) undertaking, in this case, Mother was just a few hours away by car. We can appreciate that the distance involved made things challenging for Mother, but she did not even take advantage of the opportunities available to her. We do not find this argument to be compelling.

## III. Best Interests

[18] Finally, Mother contends that the trial court erred by concluding that termination is in the children's best interests. At the time of the termination hearing, the children had been in foster care for three years and deserved permanency. *See K.T.K.*, 989 N.E.2d at 1235 (observing that permanency and stability are key considerations in determining the best interests of a child).

Mother had all that time to begin to address the issues underlying the CHINS case and simply failed to do so. She failed to complete a single court-ordered service successfully. She tested positive for marijuana throughout the case. She had not seen the children in over a year at the time of the termination hearing. The children no longer even wished to see her. The children's CASA and FCM both testified that they believed termination is in the children's best interests. We find that this evidence supports the trial court's conclusion that termination is in the children's best interests. Mother's arguments to the contrary merely amount to a request that we reweigh the evidence, which we may not do.

[19] The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.