## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 09 2019, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander L. Hoover
Law Office of
Christopher G. Walter, P.C.
Nappanee, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of Parent-Child Relationship of: | May 9, 2019 |
| C.S. (Minor Child) | Court of Appeals Case No. 18A-JT-2967 |
| and | |
| K.S. (Mother), | Appeal from the Starke Circuit Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Kim Hall, Judge |
| The Indiana Department of Child Services, | Trial Court Cause No. 75C01-1802-JT-1 |
| *Appellee-Petitioner* | |

**Baker, Judge.**

[1] K.S. (Mother) appeals the order terminating her parent-child relationship with C.S. (Child). Mother argues that the evidence is insufficient. Finding the evidence sufficient, we affirm.

# Facts

[2] Child was born in November 2015. On August 25, 2016, Mother and Child's father[1] were arrested in Starke County on drug charges;[2] on that same day, Mother submitted to a drug screen that returned positive for opiates. The Department of Child Services (DCS) removed Child and placed him in foster care.[3]

[3] On August 26, 2016, DCS filed a petition alleging that Child was a Child in Need of Services (CHINS). On October 26, 2016, Mother admitted to the allegations in the CHINS petition, including substance abuse and her inability to care for Child, and the juvenile court found Child to be a CHINS. At the December 13, 2016, dispositional hearing, the juvenile court ordered Mother to participate with certain services, including completing a substance abuse assessment and complying with any recommendations; submitting to random

---

[1] Father is not involved in this appeal.

[2] Specifically, Mother was charged with Level 5 felony dealing in methamphetamine, Level 6 felony neglect of a dependent, Level 6 felony possession of precursors, Level 6 felony possession of a narcotic drug, and Level 6 felony maintaining a common nuisance.

[3] Two days later, Child was placed in relative care and has remained in that placement since that time.

drug screens; completing a parenting assessment and complying with any recommendations; and attending all scheduled visits with Child.

## *Mother's Criminal Conduct*

On September 2, 2016, Mother was released from incarceration in Starke County so that she could participate with substance abuse treatment at Life Treatment Center. On October 11, 2016, a bench warrant was issued after Mother admitted to heroin use, absconded from drug treatment, and did not report back to the Starke County Justice Center. Four days later, she was arrested in Porter County and charged with Level 6 felony possession or control of a hypodermic needle. She remained incarcerated in Porter County and pleaded guilty on January 6, 2017. While incarcerated in Porter County, she completed an intensive outpatient drug treatment program. On March 3, 2017, she was sentenced to time served and was transported from Porter County to Starke County, where the charges were still pending from the August 2016 arrest.

On May 19, 2017, Mother was released on her own recognizance on home detention. She was arrested on July 28, 2017, for violating the terms of her pretrial release after she missed two drug screens and tested positive for suboxone with no valid prescription. On November 16, 2017, Mother pleaded guilty to dealing in methamphetamine, neglect of a dependent, and possession of a narcotic drug. After sentencing, her earliest possible release date from the Department of Correction (DOC) is June 1, 2020.

### *Mother's Drug Use*

On August 25, 2016, Mother tested positive for opiates at the time of her Starke County arrest. She was released on her own recognizance so that she could enter drug treatment; after only three clean drug screens, she spent a weekend away from the facility and upon returning, admitted to using heroin. She refused to enter detox services and left the facility. A few days later, she was arrested in Porter County on a new drug charge.

Mother was released on her own recognizance from incarceration in Starke County on May 19, 2017. She participated and provided clean drug screens until she tested positive for THC on July 27, 2017. The next day, she was placed back in Starke County Jail because she had failed to report for two drug screens with community corrections and had tested positive for suboxone on July 24, 2017. Mother is currently incarcerated in the DOC. On March 27, 2018, she was cited for use/possession of tobacco; and on March 28, 2018, she was cited for use/possession of a controlled substance.

### *Mother's Participation with Services and Visits*

Mother has been incarcerated for much of the underlying CHINS case. Her only significant period of non-incarceration occurred between May 19, 2017, and July 28, 2017. During that time, she attended only six intensive outpatient sessions and cancelled four others. Moreover, while incarcerated, she has not taken advantage of programs offered by the DOC.

[9] Mother has also failed to consistently visit Child or take advantage of all opportunities to maintain contact. Her first visit with Child was in June 2017, and because it had been ten months since Mother and Child had had contact, Child did not remember Mother and Mother became upset. Mother was authorized to have phone calls, video calls, and supervised home visits, but Mother did not take advantage of these opportunities because she was uncomfortable that Child did not remember her. She frequently failed to attend visits, cancelled visits, and ended visits early. She had five visits with Child in June 2017 and five visits with Child in July 2017. During the visits, the supervisor needed to prompt Mother to meet Child's needs and had to step in to assist for safety reasons on more than one occasion. The supervisor reported that Mother tried to parent Child but did not know what to do or how to act. Mother was arrested again in July 2017 and has had no form of contact with Child since that time. Mother has made no attempt to maintain a relationship with Child while incarcerated.

### Termination Proceedings

[10] On March 6, 2018, DCS filed a petition to terminate the parent-child relationship. The factfinding hearing occurred on June 20, 2018. At the hearing, evidence was provided that there is no evidence of a bond between Mother and Child. Child views his relative caregivers as his mother and father and views their biological children as his siblings. The home is stable, loving, and preadoptive, and Child is thriving. The Family Case Manager testified that in her opinion, termination is in Child's best interests. On November 14, 2018,

the juvenile court issued an order terminating the parent-child relationship. Mother now appeals.

# Discussion and Decision

# I. Standard of Review

Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A)    that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

>    (D)    that there is a satisfactory plan for the care and treatment
>           of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

# II.  Sufficiency

## A.  Remedy of Conditions Resulting in Removal

Mother first argues that there is not clear and convincing evidence that there is a reasonable probability that the conditions resulting in Child's removal will not be remedied.  The reasons that Child was initially removed from Mother's care and custody were Mother's substance abuse and incarceration.

Throughout the underlying CHINS case, Mother had periods of sobriety (usually while incarcerated) followed by drug use.  She has tested positive for opiates, THC, and suboxone during these proceedings and has also admitted to heroin use and pleaded guilty to possession of a hypodermic needle.  Except for her completion of an intensive outpatient program while incarcerated in Porter County, she has failed to complete or participate consistently with substance abuse treatment despite multiple opportunities to do so.

Mother has also been incarcerated throughout much of the underlying CHINS case and is now sentenced to the DOC, with an earliest possible release date of June 2020.  She has had multiple chances to reform her behavior while released from incarceration, but each time she was re-arrested after violating the terms of her release.  In fact, even while incarcerated with the DOC, she has been cited

more than once for use or possession of a substance she was not allowed to have.

[16] Mother argues that her inconsistent participation with services and her multiple clean screens suffice to show that there is a likelihood that the conditions resulting in removal will be remedied. We cannot agree. Inconsistent participation and multiple clean screens are not enough when they are interspersed with drug use and incarceration. The simple fact is that Child was removed because of Mother's drug use and incarceration, and at the time of the termination hearing, Mother was incarcerated with the DOC for drug charges and, when last released on her own recognizance, had tested positive for THC and suboxone. Under these circumstances, we find that the juvenile court did not err by finding that DCS established by clear and convincing evidence that the conditions resulting in Child's removal are not likely to be remedied.[4]

## B. Best Interests

[17] Mother also argues that there is insufficient evidence supporting the juvenile court's conclusion that termination of the parent-child relationship is in Child's best interests. A parent's "historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that

---

[4] Mother also argues that there is insufficient evidence supporting the juvenile court's conclusion that continuation of the parent-child relationship poses a threat to Child. As these statutory elements are phrased in the disjunctive and we have found that sufficient evidence supports the element related to remedy of the conditions resulting in Child's removal, we need not and will not address this issue.

termination of parental rights is in the best interests of the child[].” *Lang v. Starke Cty. Office of Family and Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007).

[18] As noted above, throughout the underlying CHINS case, Mother has been unable to maintain sobriety or to remain free from incarceration. She has also failed to take advantage of all opportunities to maintain a relationship with Child, both while incarcerated and while on pretrial release. Although authorized to have phone calls, video calls, and home visits while on release, Mother did not take advantage of these chances to build and maintain a relationship. Mother and Child had no contact for the first ten months of the CHINS case, and at the time of the termination hearing, Mother and Child had had no contact for eight months. There is no bond between Mother and Child, who views his relative care placement as his family. He is thriving in this placement, which is preadoptive. Under these circumstances, we find sufficient evidence supporting the juvenile court’s conclusion that termination is in Child’s best interests.

[19] The judgment of the juvenile court is affirmed.

Najam, J., and Robb, J., concur.