# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 03 2019, 6:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Isabella H. Bravo
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of: <br><br> T.L. and D.A. (Minor Children), <br> and <br> A.L. (Mother), <br> *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, <br> *Appellee-Petitioner* | July 3, 2019 <br><br> Court of Appeals Case No. 19A-JT-175 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Stephen R. Heimann, Senior Judge <br><br> Trial Court Cause Nos. 53C06-1805-JT-366 53C06-1805-JT-367 |

**Baker, Judge.**

[1] A.L. (Mother) appeals the trial court's order terminating the parent-child relationship between Mother and her two children, T.L. and D.A. (the Children). Mother argues that the evidence is insufficient to support the termination order. Finding the evidence sufficient, we affirm.

## Facts

[2] D.A. was born in October 2004 and T.L. was born in November 2005.[1] On July 8, 2016, Mother took a drug screen that was positive for methamphetamine, heroin, and morphine. As a result of that screen, the Department of Child Services (DCS) filed a petition alleging that the Children were children in need of services (CHINS). On July 19, 2016, Mother tested positive for morphine; on July 23, 2016, she admitted that she uses heroin daily and needed help to obtain treatment for her addiction; and on July 27, 2016, she tested positive for methamphetamine, heroin, and morphine. On July 29, 2016, DCS removed the Children from Mother's care and custody. In August 2016, Mother tested positive for methamphetamine and morphine.

[3] Mother failed to appear at the October 27, 2016, CHINS factfinding hearing.[2] Following that hearing, the trial court found that the children were CHINS. Mother again failed to appear at her December 5, 2016, dispositional hearing.

---

[1] The Children's father voluntarily consented to the termination of his parental rights and is not a party to this appeal.

[2] Mother did not appear at any hearings in the CHINS case until October 3, 2017. She blamed her failures to appear on the fact that she was homeless, unemployed, depressed, and intermittently incarcerated.

Following that hearing, the trial court ordered her to participate in the following services: complete a substance abuse assessment and comply with any recommendations; random drug screens; home-based case management;[3] visits with the Children; and stay in regular contact with DCS.

[4] In January 2017, Mother sought inpatient treatment but was placed on a waiting list. That same month, she was arrested for possession of cocaine. In March 2017, she was arrested for a new charge of possession of cocaine. In June 2017, there was a warrant for her arrest on a probation violation.

[5] Mother stopped providing random drug screens after the positive screen in August 2016. The next screens occurred in July 2017, when she tested positive four times for methamphetamine, heroin, and morphine.

[6] DCS located Mother in the Marion County Jail in August 2017. During her intermittent periods of incarceration, Mother attended some classes in a handful of programs. Her DCS case manager went to visit her at the jail upon learning she was there; Mother reported that she needed substance abuse treatment and that her mental health was "very poor." Tr. Vol. II p. 90.

[7] By February 2017, Mother had not seen the Children since September 2016. When she did attend visits, "there were concerns about [her] lack of involvement[.]" Appealed Order p. 3. She visited with the children once in

---

[3] Mother has participated sporadically with home-based case management but has failed to be consistent. She has never successfully completed that service.

February and once in April 2017. The "limited contact has been very hurtful to the children." *Id.*

[8] As of October 2017, Mother was homeless and unemployed. She had not visited with the children since April 2017. She participated in a substance abuse assessment in October 2017 but failed to participate with the recommended recovery coaching program.[4] She advised DCS that she intended to enroll in an inpatient program and that she did not need transportation assistance. Mother never provided verification that she, in fact, completed an inpatient program, and failed to sign a release of information so that DCS could obtain the information for itself. Because Mother was homeless, she could not provide an address for drug screens.[5] Her case manager offered to drive to Indianapolis from Bloomington to conduct the drug screens, but Mother declined.

[9] In December 2017, Mother reported to DCS that she had been arrested, that she had relapsed, and that she had attempted suicide. In January 2018, Mother claimed that she had found employment and housing and would begin attending recovery services, drug testing, and visits with the Children.

[10] On January 3 and February 7, 2018, Mother tested positive for methamphetamine. She attended a visit with the Children on February 7 and

---

[4] Mother claimed that she instead chose to use a 1-800 phone number called the "WARM Line," for addicts in recovery. The trial court noted that the WARM Line offers no accountability or reporting.

[5] DCS was attempting to help Mother by providing a service that would come to her to conduct the drug screens rather than requiring her to find transportation to go to a drug screening center.

one of the Children and their grandmother informed DCS that Mother was impaired. At an April 10, 2018, hearing, DCS reported that Mother had been incarcerated from February 15-22 on a warrant for a failure to appear for hearings in a criminal case; another warrant was issued on March 14, and at the time of the hearing, Mother's whereabouts were unknown.

[11] At a July 17, 2018, hearing in the CHINS case, it was reported that Mother had recently been released from incarceration after admitting to illegal possession of a syringe. She was sentenced to 365 days of house arrest. Mother was arrested again in August 2018 for removing and breaking her ankle monitor.

[12] Throughout the CHINS case, DCS case managers attempted to stay in contact with Mother but struggled to do so. Intermittently incarcerated and homeless with no active phone number and making few efforts to contact DCS when able to do so (for instance, during periods of incarceration), Mother did not make a sustained effort to stay in touch with DCS. Mother claimed that she asked DCS for assistance in procuring a cell phone, but such assistance occurs through home-based case management, which was a service with which she failed to participate. When Mother did have a cell phone, she was still inconsistent with communication with DCS, and when she did not, she was able to stay in regular contact with family members but not with DCS. Tr. Vol. II p. 98-99.

[13] On May 10, 2018, DCS filed a petition to terminate the parent-child relationship between Mother and the Children. The termination factfinding

hearing took place on September 13, October 11, and November 29, 2018. At the time of the hearing dates, Mother had not seen the Children since the February 7, 2018, visit when she was under the influence.

[14] Among other things, Mother testified that she needed the Children to stay sober: ". . . I needed my kids in order to stay sober. If I don't have my kids, then . . . I'm probably not going to stay sober." *Id.* at 23. She also claimed that at some point in the past, she had sustained a traumatic brain injury (TBI) after being shot in the head, but offered no medical evidence regarding that condition or proof beyond her own self-serving testimony that it had occurred.

[15] The Children's court appointed special advocate (CASA) testified that T.L. wanted no contact with Mother and that both Children were ready to be adopted. D.A. has multiple diagnoses, including post-traumatic stress disorder and depressive disorder, and has exhibited some cutting behavior; he has a therapist and a life coach and his needs are being met. The Children are placed in different homes but have continued to visit with each other twice a month and are not concerned about being placed in different homes. The CASA and DCS case manager testified that in their respective opinions, termination is in the Children's best interests.

[16] On December 20, 2018, the trial court entered its order granting the termination petition. At the outset of its order, the trial court emphasized that "[o]ne of the most important duties of a trial court is to determine the credibility of witnesses.

The Court finds that Mother lacks credibility." Appealed Order p. 1 (emphasis omitted). Mother now appeals.

# I. Standard of Review

Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

# II.  Sufficiency

# A.  Reasons for Removal

Mother first argues that the trial court erred by finding that DCS proved by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the Children's removal will not be remedied.  The reason the Children were originally removed from Mother's care and custody was substance abuse.

While Mother has had occasional periods of sobriety throughout this case, primarily during times in which she was incarcerated, she has never demonstrated an ability to remain sober for a consistent and sustained period. Moreover, she has never demonstrated a willingness to participate in any services designed to help her attain and maintain sobriety.

While Mother was required to participate with random drug screens in the CHINS case, she had frequent, lengthy periods where she provided no screens at all.  And when she did provide screens, they were often positive for multiple illegal substances.  She was homeless for a period of time and therefore unable to provide an address at which the screens would occur, but she refused the DCS case manager's offer to drive to Indianapolis to provide the screens.

[22]  Mother never participated consistently with substance abuse treatment. Approximately one year into the CHINS case, Mother finally completed a substance abuse assessment, but she failed to follow through with the recommended services. She indicated an intent to complete inpatient treatment but DCS was unable to verify that she actually attended. She failed to sign a release of information so that DCS could obtain that information.

[23]  In addition to substance abuse, the Children continued to be removed from Mother's care and custody because of general concerns about the stability of her life. And indeed, throughout the CHINS case, Mother was intermittently incarcerated, homeless, and unemployed. In the months leading up to the termination hearing, she was on house arrest after admitting to possessing an illegal syringe; then, she was arrested after removing and breaking her ankle monitor. She was still incarcerated during the termination hearing.

[24]  Mother directs our attention to some of her testimony showing that she tried to participate in various services and attempting to explain her instability, but as noted above, the trial court did not find her to be a credible witness, and we may not second-guess that determination. Moreover, these arguments merely amount to a request that we reweigh the evidence, which we may not do. There is sufficient evidence in the record supporting the trial court's conclusion that DCS proved by clear and convincing evidence that there is a reasonable

probability that the conditions that resulted in the Children's removal will not be remedied.[6]

[25] Mother argues that part of the reason for her lack of success was that DCS failed to provide her with services that were "tailored to [her] functional limitations." Appellant's Br. p. 23. Assuming for argument's sake that DCS is required to do so, we note that the only evidence in the record that Mother had sustained a TBI in the past is her own self-serving testimony, which the trial court explicitly found to be not credible. Furthermore, there is no evidence regarding what it means to have a TBI; what Mother's alleged "functional limitations" are; or what kind of services she needed given those limitations. Under these circumstances, we decline to find error on this basis.

## B. Best Interests

[26] Mother also argues that the trial court erred by finding that DCS proved by clear and convincing evidence that termination is not in the Children's best interests. A parent's "historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children." *Lang v.*

---

[6] Because we find that this element was proved by clear and convincing evidence, we need not consider Mother's argument that the trial court erred by finding that continuation of the parent-child relationship posed a threat to the Children's well-being. We note, however, that the same evidence supporting a conclusion that the reasons for removal are not likely to be remedied would likewise support a conclusion that continuation of the parent-child relationship posed a threat to the Children's well-being.

*Starke Cty. Office of Family and Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007).

[27] Throughout the CHINS proceedings, Mother has been unable to remain sober or free from incarceration. She failed to participate consistently with a single service offered by DCS. She failed to visit consistently with the Children when not incarcerated. The lack of consistent contact was hurtful to the Children. Also hurtful to the Children is Mother's belief that she cannot maintain sobriety if they are not in her care. Now, the Children are both teenagers and they wish to be adopted, with T.L. insisting that she no longer wants any relationship or contact with Mother. Their CASA and the DCS case manager testified that, in their respective opinions, termination is in the Children's best interests. Given this evidence, we conclude that the trial court did not err by finding that DCS proved by clear and convincing evidence that termination is in the Children's best interests.

[28] The judgment of the trial court is affirmed.

Najam, J., and Robb, J., concur.