Steven LANG, Appellant–Respondent,

v.

**STARKE COUNTY OFFICE OF FAMILY AND CHILDREN,**
Appellee–Petitioner.

No. 75A03–0607–JV–287.

Court of Appeals of Indiana.

Feb. 14, 2007.

Martin R. Lucas, North Judson, IN, Attorney for Appellant.

Edward R. Ruiz, Morris & Ruiz, P.C., Plymouth, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Steven Lang appeals from the trial court's order involuntarily terminating his parent-child relationship with his three daughters. On appeal, he raises four issues, which we consolidate and restate as: (1) whether clear and convincing evidence supports the trial court's order terminating Lang's parental rights; (2) whether

Lang was denied effective assistance of counsel; and (3) whether the involuntary termination violated Lang's due process rights. We affirm, concluding that clear and convincing evidence exists to support the trial court's order, that Lang's counsel was effective, and that Lang was afforded due process.

### Facts and Procedural History

Lang is the father of three children, K.L., Sh.L., and St.L., who were all born during Lang's marriage to his now-deceased wife. On July 19, 2002, an incident occurred where Lang hit St.L. with a belt, leaving bruises and marks and affecting her ability to walk. The State filed criminal charges against Lang, who was convicted on March 17, 2003, of battery resulting in bodily injury, a Class D felony. On July 29, 2002, the Starke County Office of Child Services (the "DCS" [1]) filed petitions alleging that all three children were children in need of services ("CHINS") as a result of the July 19 incident and information gained in subsequent interviews with the children. A hearing was held on September 19, 2002, and on September 23, 2002, the trial court adjudicated the three children to be CHINS. On October 1, 2002, the trial court entered dispositional orders providing that the children would remain in out-of-home placement, and that Lang would participate in family counseling with the children and would have supervised visitation.

When Lang began family counseling at the Behavioral Health Center ("BHC"), he signed a "contract for services" containing a clause stating that he would not use corporal punishment on his children. However, Lang soon reneged after more fully understanding the contract, and stated that he believed corporal punishment is appropriate in certain instances. The

BHC denied Lang Thanksgiving and Christmas passes to have unsupervised home visitation with K.L., who at the time resided in the BHC, on the basis of his refusal to agree to not use corporal punishment. After Lang displayed an aggressive attitude at family counseling, the sessions were moved from their original location to one in the front of the BHC building, where therapists felt safer. BHC therapists ended the counseling in February 2003 because of a lack of progress and Lang's oppositional manner.

In the spring of 2003, Lang moved into his stepson's residence. After a Family Focus staff member in charge of supervising Lang's visitation felt threatened by Lang's stepson's aggressive behavior, and Lang failed to cooperate with arrangements for an alternative visitation site, visitation was halted in May 2003. Lang's home-based parenting counseling was also halted after six months because of his failure to attend sessions, return the therapist's phone calls, or initiate services.

The DCS filed Petitions for Termination of the Parent–Child Relationships between Lang, St.L., Sh.L., and K.L. on December 10, 2003. The trial court entered an Order on December 17, 2003, indicating that Lang was to cooperate with the DCS, and contact the DCS in order to arrange supervised visitation with St.L., Sh.L., and K.L. The DCS met with Lang and informed him that supervised visitation would be contingent on his agreement to not discuss the pending termination of parental rights cases with his children. Lang refused to agree to this stipulation, and was denied visitation. Since this time, Lang has neither requested nor received parenting time with any of his children.

The trial court held a hearing on the DCS's petition for termination on Febru-

1. This organization is now known as the De- partment of Child Services.

ary 17, 2006. It entered an order on February 28, 2006, terminating Lang's parental rights. Lang now appeals this order.

### Discussion and Decision

#### I. Termination of Parental Rights

##### A. Standard of Review

When reviewing a termination of parental rights, we neither reweigh evidence nor judge witness credibility; instead we consider only the evidence most favorable to the judgment and the reasonable inferences that can be drawn from the evidence. *In re J.W.*, 779 N.E.2d 954, 959 (Ind.Ct.App.2002), *trans. denied.* When, as in this case, the trial court enters findings of fact along with its judgment sua sponte, the findings control only the issues covered, and we use a general judgment standard for issues for which the court did not make findings. *McBride v. Monroe County Office of Family and Children*, 798 N.E.2d 185, 198 (Ind.Ct.App.2003). A finding will not be set aside unless we find it clearly erroneous. *Id.* We will affirm the general judgment on any legal theory the evidence supports. *Id.* A finding is clearly erroneous when no facts or inferences support it. *In re J.W.*, 779 N.E.2d at 959. We will reverse a judgment as clearly erroneous if we review the record and have "a firm conviction that a mistake has been made." *Id.*

##### B. Basis for Trial Court's Decision

■■■ A parent has a constitutional right to raise his or her children, but this right is "not absolute and must be subordinated to the children's interests when the children's emotional and physical development is threatened." *A.F. v. Marion County Office of Family and Children*, 762 N.E.2d 1244, 1249 (Ind.Ct.App.2002), *trans. denied.* Although parental rights are afforded constitutional protections, these rights may be terminated when parents are unable or unwilling to meet their parental responsibilities. *In re R.S.*, 774 N.E.2d 927, 930 (Ind.Ct.App.2002), *trans. denied.* We do not terminate these rights to punish a parent, but to protect a child. *Id.*

The elements that must be proved by clear and convincing evidence in order to terminate a parent-child relationship are set out in Indiana Code section 31–35–2–4(b)(2):

(A) one (1) of the following exists:

 (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

 * * *

(B) there is a reasonable probability that:

 (i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

 (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interest of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

■■■ Lang argues that terminating his parental rights based on his refusals to repudiate corporal punishment and to not discuss the pending termination of parental rights with his children constituted reversible error. Lang is correct that under Indiana law, reasonable corporal punishment is legal, *see Dayton v. State*, 501 N.E.2d 482, 484–85 (Ind.Ct.App.1986), and that a parent involved in a CHINS proceeding is not inherently required to repudiate corporal punishment. *In re Termination of Parent–Child Relationship between Children: T.C., C.F.*, 630 N.E.2d 1368, 1375 (Ind.Ct.App.1994), *trans. denied.* Therefore, we agree that

had the trial court in fact terminated Lang's parental rights on the sole bases that he used reasonable corporal punishment and failed to repudiate the use of reasonable corporal punishment, the trial court's judgment would be clearly erroneous.

However, the trial court did not terminate Lang's parental rights on these bases. Instead, the trial court's findings indicate that its decision to terminate Lang's parental rights was properly based on the statutory factors. The first factor is not at issue, as it is undisputed that all three children have been removed from Lang for at least six months. We will now examine the remaining three sections of the statute.

1. Reasonable Probability That Conditions That Led to Removal Will Not Be Remedied [2]

■ When making this determination, trial courts should judge a parent's fitness at the time of the termination hearing, considering any change in conditions since the removal. *In re D.J.*, 755 N.E.2d 679, 684 (Ind.Ct.App.2001), *trans. denied.* A pattern of repeated abuse is relevant to a determination that a reasonable probability exists that the condition will not be remedied. *See In re R.S.*, 774 N.E.2d at 930–31. The trial court can also consider the parent's response to the services offered through the DCS. *In re D.J.*, 755 N.E.2d at 684. "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the

conditions will change." *In re L.S.*, 717 N.E.2d 204, 210 (Ind.Ct.App.1999), *trans. denied, cert. denied,* 534 U.S. 1161, 122 S.Ct. 1197, 152 L.Ed.2d 136 (2002). Also, the failure to exercise the right to visit one's children demonstrates a "lack of commitment to complete the actions necessary to preserve [the] parent-child relationship." *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind.Ct.App.2002).

Regardless of whether the BHC can legally require Lang to agree to not use corporal punishment on his children or discuss an impending termination proceeding with children,[3] the trial court's findings clearly indicate that Lang refused to cooperate with counselors and therapists and failed to recognize the unreasonableness of the corporal punishment he used in the past. *Cf. In re Involuntary Termination of Parent-Child Relationship of J.M.*, 802 N.E.2d 40, 45 (Ind.Ct.App.2004), *trans. denied* (concluding that parent's "failures centered around her inability to accept responsibility for her situation, coupled with her inability to benefit from services that she had previously completed").

Lang clearly has a history of using unreasonable corporal punishment. Besides the July 19 incident, for which he was convicted of felony battery, St.L. testified that Lang had done similar things to her sisters and that on one occasion he had thrown St.L. into a dresser. Moreover, Lang has not shown in any way that he has the ability to differentiate from reasonable and unreasonable corporal punishment, or that he has changed his views on

---

**2.** Because subsection (B), is written in the disjunctive, we will affirm if clear and convincing evidence supports either condition. *Castro v. State Office of Family and Children,* 842 N.E.2d 367, 373 (Ind.Ct.App.2006), *trans. denied.* Therefore, we do not discuss whether evidence supports the trial court's conclusion that the continuation of the relationship be-

tween Lang and his children poses a threat to the children because we find that clear and convincing evidence supports the trial court's conclusion that the conditions that resulted in the children's removal will not be remedied.

**3.** *See infra,* section IV.

what forms of corporal punishment would be reasonable. *See Matter of C.D.*, 614 N.E.2d 591, 595 (Ind.Ct.App.1993), *trans. denied* (father's failure to change views on corporal punishment, where previous use of corporal punishment had been unreasonable, supported judgment terminating parental rights). Indeed, Lang continues to defend his actions surrounding the July 19 incident, despite being convicted of felony battery. His actions in hitting St.L. with a belt and leaving various marks and bruises clearly crossed the line between reasonable and unreasonable corporal punishment. *See Roark v. Roark*, 551 N.E.2d 865, 871 (Ind.Ct.App.1990) ("[W]e do not consider that we stretch ourselves in stating that use of a belt on any child under the age of ten is an unreasonable form of corporal punishment"). This factor, along with his lack of cooperation with those charged with remedying the situation, supports the trial court's finding of a reasonable probability that the condition (Lang's physical abuse) that led to the children's removal will not be remedied. *See In re Involuntary Termination of Parent–Child Relationship of A.K. and Kilbert*, 755 N.E.2d 1090, 1097 (Ind.Ct.App.2001) (trial court's conclusion that conditions that led to removal would not be remedied was supported where there was no evidence that mother had taken steps necessary to overcome her drug addiction); *M.B. v. Delaware County Dept. of Public Welfare*, 570 N.E.2d 78, 82 (Ind.Ct.App.1991), *called into doubt on other grounds by S.E.S. v. Grant County Dept. of Welfare*, 594 N.E.2d 447 (Ind.1992) (holding that evidence of mother's failure to cooperate with agencies assigned to help her, and her failure to improve manner in which she cared for children supported trial court's conclusion of reasonable probability that conditions would not be remedied).

Finally, although the above facts, standing alone, support the trial court's finding, we also note that Lang failed to actively seek visitation with any of his children after being told that visitation was suspended based on his failure to repudiate corporal punishment or to agree to not discuss the termination proceeding with his children. This inaction indicates Lang's lack of commitment to preserve his relationship with his children. There is no evidence that Lang filed any motions or sought any legal action after being told of these conditions. Most importantly, regardless of the legality of these conditions, the fact that Lang would rather not see his children than see them with these imposed conditions speaks volumes of his commitment to remedying the problems that led to the children's removal.

The trial court's finding that there is a reasonable probability that the conditions that led to the removal of Lang's children will not be remedied was supported by the evidence and is not clearly erroneous.

2. Best Interests of the Children

■ A determination of the best interests of the children should not be based merely on the factors identified by the DCS, but instead should be based on the totality of the circumstances. *In re J.W.*, 779 N.E.2d at 962. A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children. *In re A.L.H.*, 774 N.E.2d at 900.

The trial court found that termination would be in the children's best interests for the following reasons:

a. Father has failed or refused to complete all of the requirements and services in his DCS case plan(s).

b. Father has physically abused [K.L.], [Sh.L.], and [St.L.] for several years,

causing physical and psychological harm to the children.

c. Father refuses to agree to not use corporal punishment on the children.

d. [K.L.], [Sh.L.] and [St.L.] fear Father

e. [K.L.], [Sh.L.] and [St.L.] don't want to be reunified with Father.

Appellant's App. at 25.

The evidence supports these findings. As discussed above, St.L. testified as to Lang's history of using unreasonable corporal punishment, and Lang's refusal to work with the DCS presents a reasonable probability that he will continue to do so. Also, DCS case workers and the Court Appointed Special Advocate ("CASA") testified that termination of parental rights would be in the children's best interests for a variety of reasons, including that the children do not wish to return home because of their fear of Lang and that termination will ease the children's anxiety about the possibility that they will have to return home at some point in the future. Cf. In re T.F., 743 N.E.2d 766, 776 (Ind.Ct. App.2001), trans. denied (opinions of Guardian ad Litem and family case manager considered evidence supporting finding that termination of parental rights was in child's best interests). Lang also refused to cooperate with the DCS in several manners, and failed to complete either family or individual counseling.

Additionally, Lang has failed to pay court-ordered child support since July 2003 "because [the children's] upkeep and therapy that [child support] is going towards, I should not be responsible for that. Those are conditions which were caused by the actions of the welfare department and this Court." Tr. at 243. Again, Lang has

subordinated the interests of his children to his personal aversion towards those assigned to help him. Finally, as discussed above, Lang has demonstrated that he is willing to forego visitation if he is not allowed to use corporal punishment or discuss the termination proceeding with his children. The trial court's finding that termination is in the children's best interests is supported by the evidence and is not clearly erroneous.

### 3. Satisfactory Plan

■■ Lang also argues that there is not a satisfactory plan in place for the placement of the children. Lang has cited no authority in making this argument.[4] Regardless, we conclude that there is a satisfactory plan in place.

■■ For a plan to be "satisfactory," for purposes of the statute, it "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." In re Termination of Parent–Child Relationship of D.D., 804 N.E.2d 258, 268 (Ind.Ct.App. 2004), trans. denied. The trial court found:

76. There is a satisfactory DCS plan for the care and treatment of the three children as follows:

a. Adoption of [K.L.], [Sh.L.] and [St.L.] or

b. Adoption of [K.L.] and [Sh.L.] and independent living for [St.L.]

77. There is a satisfactory CASA plan for the care and treatment of the three children as follows:

a. Adoption of [Sh.L.]

---

4. We remind Lang of Indiana Appellate Rule 46(A)(8)(a). We also note that in arguing this issue, both parties made several statements of fact without citation to the record. See Ap-

pellee's Br. at 10–11; Appellant's Br. at 17. We remind both parties that statements of fact must be supported by citations to the record. Ind.App. Rule 46(A)(8)(a), (B).

b. Independent living for [K.L.] and [St.L.]

Appellant's App. at 25. These findings were supported by the testimony of Katherine Lemke, the CASA, and Katherine Purtee, the family case manager with the DCS. Attempting to find suitable parents to adopt the children is clearly a satisfactory plan. *Matter of A.N.J.*, 690 N.E.2d 716, 722 (Ind.Ct.App.1997). The fact that there was not a specific family in place to adopt the children does not make the plan unsatisfactory. *In re B.D.J.*, 728 N.E.2d 195, 204 (Ind.Ct.App.2000). We also find that continuing the independent living situation, in which K.L. and St.L. were currently enrolled, is an acceptable plan as it gives a general sense of the direction of the treatment and care that K.L. and St.L. would receive. The trial court's finding that there was a satisfactory plan was supported by the evidence and is not clearly erroneous.

The trial court found that (1) the children have been removed from Lang for more than six months; (2) there is a reasonable probability that the situation that led to the children's removal will not be remedied; (3) termination of Lang's parental rights is in the children's best interests; and (4) there is a suitable plan in place for the children's care. Theses findings were supported by the evidence and are not clearly erroneous. These findings support the trial court's judgment terminating Lang's parental rights.

II. Effective Assistance of Counsel

 In Indiana, all indigent parties have a statutory right to the assistance of counsel in termination of parental rights proceedings. Ind.Code §§ 31–32–4–1; 31–32–2–5. However, the inquiry into whether counsel's assistance was effective is not the Strickland[5] inquiry used in criminal cases; instead "the focus of the inquiry [is] whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination." *Baker v. Marion County Office of Family and Children*, 810 N.E.2d 1035, 1041 (Ind.2004). Therefore, we must decide "whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest." *Id.*

Lang concedes that his attorney performed effectively at trial, but argues that his attorney was ineffective for three reasons: (1) his failure to ensure that Lang had an opportunity to review the tapes and transcripts of the previous CHINS proceeding; (2) his failure to cite statutory or case law during his cross examination regarding the DCS's denial of visitation based on Lang's refusal to repudiate corporal punishment or to agree to not discuss the termination proceeding with his children; and (3) failure to take action to reinstate Lang's visitation during the pendency of the termination hearing.

 With regard to the tapes and transcripts, Lang's attorney filed a motion, which the trial court granted, requesting that Lang be allowed to review the tapes and transcripts from the CHINS proceeding. Apparently, when Lang showed up at court on the scheduled date to view the materials, the machines needed to view the materials were in use. Lang testified that he called his attorney after not being able to view the materials, but took no other action during the three months between this scheduled date and the termination proceeding. Regardless of whether Lang's attorney should have further assist-

5. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

ed Lang in reviewing these materials, Lang's inability to review these materials in no way casts doubt on the result of the proceeding. Lang testified that he wished to review the materials

> Because it is very likely that opposing counsel will argue in some manner that there is some history of problems internal to the family as told by the previous [CHINS] hearings. I ... wish to present that since we were denied due process in [the CHINS] hearings, no such evidence can be considered ... [and to] show both that the Judge himself lied to me about discovery in order to prevent us from ever knowing what we were being accused of before arriving in Court.

Transcript at 10. We first note that the State introduced virtually no evidence of events prior to June 19, and focused on Lang's failure to cooperate with the DCS during the efforts to reunite the family after the children's removal. Indeed, the only significant evidence of events that occurred prior to June 19 was St.L.'s testimony regarding Lang's history of hitting K.L. and Sh.L. and throwing St.L. into a dresser. Lang himself elicited this testimony on cross-examination.

We conclude that Lang's failure to review these hearings, at which he himself was present, does not affect our confidence that termination of the parent-child relationship is in the children's best interests or that the reasons for which the children were removed will not be remedied. It appears Lang merely wished to collaterally attack the previous CHINS proceedings, and has not shown in any way how his ability to review these transcripts and tapes could have affected the trial court's ruling.

 As to Lang's attorney's failure to cite case law and statutes during his cross-examination, we first note that Lang has conceded that his attorney performed effectively at trial. Secondly, Lang has not indicated how trial counsel's citation to authority would have affected the course of the proceedings. Regardless, as we have reviewed the case law and statutes here and found no error, this failure to cite the law at trial does not affect our confidence in the trial court's decision.

 With regard to Lang's attorney's failure to attempt to reinstate visitation, Lang has neither argued nor presented evidence that he requested that his attorney do so. It is not incumbent upon an attorney to take the step of securing visitation when the father has not expressed the desire that the attorney do so. Regardless, this failure hardly casts doubt on the trial court's proceeding.

We conclude that Lang's attorney provided him with effective assistance, as we cannot say that our confidence that the conditions leading to the removal of the children from Lang's parental care are unlikely to be remedied and that termination is in the children's best interests has been undermined.

### III. Due Process

 Lang argues that the involuntary termination of his parental rights violated his due process rights as it "was founded upon [DCS's] unilateral and unlawful denial of the opportunity for [Lang] to visit his children." Appellant's Br. at 27. Specifically, Lang argues that after the DCS filed its petition to terminate Lang's parental rights, it "began making decisions calculated to enhance their likelihood to succeed in their petition to terminate Mr. Lang's parental rights." Appellant's Br. at 29.

 When terminating a parent-child relationship, the State is bound by the requirements of the Due Process Clause of the Fourteenth Amendment to

the United States Constitution. *Castro*, 842 N.E.2d at 375. Assessing whether a parent's due process rights have been violated in a termination proceeding involves the balancing of three factors: "(1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing government interest supporting use of the challenged procedure." *A.L.H.*, 774 N.E.2d at 900. Both Lang's interest in maintaining his parental rights and the State's countervailing interests in protecting the welfare of children are substantial. *Id.* Therefore, we examine the risk of error created by the DCS's actions in this case.

■ If "a record is replete with procedural irregularities throughout CHINS and termination proceedings that are plain, numerous, and substantial, we are compelled to reverse a termination judgment on procedural due process grounds." *A.P. v. Porter County Office of Family and Children*, 734 N.E.2d 1107, 1118 (Ind. Ct.App.2000), *trans. denied.*

Here, Lang has neither argued nor presented evidence that the State denied him notice of any hearing, prevented him from attending a court hearing, or denied him the opportunity to be heard or confront witnesses at any hearing. We conclude that there were no significant procedural errors that violated Lang's due process rights. *See Castro*, 842 N.E.2d at 376.

As far as Lang's substantive due process concerns, we acknowledge that the DCS is required to make "reasonable efforts to preserve and reunify families." Ind.Code § 31–34–21–5.5(b). After a child has been removed from the parent's home, reasonable efforts should be made "to make it possible for the child to return safely to the child's home as soon as possible." *Id.*–5.5(b)(2). "In determining the extent to which reasonable efforts to reunify or pre-

serve a family are appropriate ... the child's health and safety are of paramount concern." *Id.*–5.5(a).

■ Here, the DCS repeatedly offered Lang services and opportunities to reunite his family. The DCS put restrictions on Lang's visitation rights that in its view were necessary to preserve the health and well-being of the children. The DCS is justified in denying visitation when it has a justifiable belief that the children will be subject to abuse. *See In re A.I.*, 825 N.E.2d 798, 817 (Ind.Ct.App.2005), *trans. denied.* A DCS case manager testified that she believed it would not be in the children's best interests to discuss the termination proceeding with Lang. There was evidence presented that the children became upset when court proceedings were discussed and we cannot say that the requirement that Lang not discuss the impending termination proceeding was either unreasonable or in violation of his substantive due process rights. We emphasize that Lang was not *prevented* from visiting his children. Visitation was merely premised on his agreement to neither use corporal punishment nor discuss the termination proceedings. It was Lang's refusal to abide by these reasonable conditions that led to his lack of contact with his children. Also, as discussed above, the termination of Lang's parental rights was not based on his failure to repudiate corporal punishment or refusal to not discuss the termination proceeding.

We conclude that the DCS's actions in this case denied Lang of neither his substantive nor procedural due process rights.

## IV. Conditional Visitation

■ Although not necessary for our decision, we will address Lang's argument that the conditions the DCS placed on his visitation were illegal.

As previously stated, parents do have the right to use reasonable corporal punishment to discipline their children. *In re T.C.,* 630 N.E.2d at 1375; *Dayton,* 501 N.E.2d at 484–85. However, just as a parent's right to raise his or her children is not absolute, we find no authority for the proposition that a parent's right to use reasonable corporal punishment is absolute and cannot in some instances be subordinated to a child's interests. Here, the DCS determined that corporal punishment was not in the best interest of Lang's children based upon his previous use of unreasonable corporal punishment. Lang is correct that a blanket policy prohibiting all forms of corporal punishment for parents undergoing family counseling would not be permissible. However, where a parent such as Lang, who has a history of using *unreasonable* corporal punishment, both refuses to recognize that his previous conduct was not permissible and refuses to work with the DCS to improve his conduct, the DCS is left with little choice but to require that the parent repudiate all forms of corporal punishment before allowing children in their care to be released to the parent's home for unsupervised visitation. As discussed above, although the DCS is required to attempt to reunify a family, the DCS's paramount concern must be the children's safety. *See* Ind.Code § 31–34–21–5.5(b)(a); *see also* Ind.Code § 31–25–2–11(b) ("the [DCS] shall ... (1) provide protection services to prevent cases where a child may be a victim of further child abuse or neglect; and (2) provide ... services necessary to ensure the safety of children"). Lang still defends his actions that resulted in him being convicted of battery resulting in bodily injury, and clearly cannot differentiate between reasonable and unreasonable corporal punishment. *See Roark,* 551 N.E.2d at 871 ("[W]e do not consider that we stretch ourselves in stating that use of a belt on any child under the age of ten is an unreasonable form of corporal punishment.") The DCS could hardly be said to act in the children's best interests were it to allow children to go into the home of a parent who (1) cannot differentiate between reasonable and unreasonable corporal punishment; (2) has used unreasonable corporal punishment in the past; (3) refuses to recognize the harm caused by this prior conduct; and (4) has generally refused to cooperate with counseling.

Lang's situation is easily distinguishable from that in *In re T.C.,* where we stated: "The evidence amply supports a finding that [the mother] engaged in a single incident of unreasonably harsh corporal punishment ... However, the [DCS's] overt goal to require [the mother] to renounce corporal punishment in favor of other methods of discipline is not required of a parent." 630 N.E.2d at 1375. We went on to state that "[r]ecognizing that the one incident was unreasonable, the record does not support a termination order on that basis." *Id.* Our decision in *In re T.C.* does not indicate that the DCS may never deny *visitation* on the grounds that a parent refuses to agree to not use corporal punishment. Instead, *In re T.C.* indicates that *termination of parental rights* cannot be based solely on a parent's failure to repudiate corporal punishment and a single incident of unreasonable corporal punishment. That is, although it is not required that a parent repudiate corporal punishment in order to maintain parental rights, the DCS may, under certain circumstances in which it has determined that children are at risk of abuse, deny visitation to a parent who refuses to repudiate corporal punishment.

Had the trial court's decision to terminate Lang's parental rights been based solely on his failure to repudiate corporal punishment, we would have no trouble re-

versing. However, as discussed above, the trial court's decision terminating Lang's parental rights was based on the statutorily mandated factors.

In regards to the condition that Lang not discuss the impending termination proceeding with his children, this condition was based on the opinion of case workers that such a condition was necessary to protect the children's well-being. Although the DCS has a duty to make reasonable efforts to maintain or reunite families, its primary duty is to protect children from harm. If such a discussion of the termination proceeding would cause psychological harm to the children, the DCS was justified in imposing this condition. We are hardly in the position, at the appellate level, to second-guess the determination of someone who has worked extensively and closely with the children. Regardless of this condition's legality, as we conclude it had no effect on the result of this termination hearing, any error was harmless.

*Conclusion*

We conclude that clear and convincing evidence supports the trial court's decision terminating Lang's parental rights. We further conclude that Lang received effective assistance of counsel and that the process through which his rights were terminated afforded him all his due process rights.

Affirmed.

BAKER, J., and DARDEN, J., concur.