## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2019, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of M.R.D. (Minor Child) <br><br> and <br><br> M.B. (Mother), <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner* | October 29, 2019 <br><br> Court of Appeals Case No. 19A-JT-812 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Faith A. Graham, Judge <br><br> Trial Court Cause No. 79D03-1808-JT-121 |

**Crone, Judge.**

## Case Summary

[1]    M.B. ("Mother") challenges the sufficiency of the evidence to support the trial court's order terminating her parental relationship with her daughter, M.R.D. ("Child"). Finding that she has failed to meet her burden of establishing clear error, we affirm.

## Facts and Procedural History

[2]    Child was born in August 2016 to Mother and N.D. ("Father") (collectively "Parents"). In the spring of 2017, the Indiana Department of Child Services ("DCS") received two reports of neglect due to Parents' drug use and unstable housing. In June 2017, shortly after Child's hair follicle tested positive for methamphetamine, DCS removed her from Parents' care and filed a petition to adjudicate Child a child in need of services ("CHINS"). Parents admitted to the CHINS allegations, and Mother was ordered to participate in a substance abuse assessment and treatment, homebased case management, a mental health assessment, and supervised visitation. She also was ordered to remain drug- and alcohol-free and to submit to drug screens at DCS's request.

[3]    On August 13, 2018, DCS filed a petition to terminate Parents' parental relationships with Child. The trial court conducted a factfinding hearing, and on March 13, 2019, the court issued an order with findings of fact and

conclusions thereon, terminating the parent-child relationships between Parents and Child. The unchallenged findings include the following:[1]

> The child … has been removed from the parent(s) for a continuous period of at least six (6) months under a dispositional decree issued on August 11, 2017 ….
>
> 9. Mother is twenty-three (23) years old and has a long-standing history of instability. Mother was herself a Child in Need of Services due to parental drug use. Mother was adopted at seven (7) years of age. Mother did not graduate high school attending through the eleventh grade only during which time she had both academic and behavioral difficulties. Mother never obtained a driver's license.
>
> 10. Mother has a juvenile delinquency history including runaway, theft, and arson. As a juvenile, Mother received treatment at various residential facilities and was eventually committed to the Indiana Department of Correction. Mother has a history of adult arrests including Theft and Driving Without a License. Mother was charged with Possession of Paraphernalia in May 2018 and entered a Pretrial Diversion Agreement in August 2018.
>
> 11. At the onset of the current CHINS case, Mother resided in a subsidized apartment obtained in April 2017 after being homeless for three (3) years. Throughout the current CHINS case, Mother was evicted, stayed in a hotel, and has resided with friends. Mother never established stable housing. At the time of the termination hearing, Mother was utilizing the Lafayette Transitional Housing address to receive mail.

---

[1] To the extent that the findings include the parties' proper names and initials, we refer to the parties as previously designated.

12. Mother was sporadically employed at various locations during the current CHINS case. At the time of the termination hearing, Mother reported recent employment at Denny's.

....

20. Mother failed to complete a parenting assessment or parenting education.

21. Throughout most of the current CHINS case, Mother was noncompliant with individual therapy and unsuccessfully discharged. Mother was scheduled to resume weekly individual therapy commencing September 21, 2018. Since that time, Mother has attended six (6) scheduled sessions....

22. Mother failed to participate in recommended substance abuse treatment throughout most of the current CHINS case. Mother was unsuccessfully discharged from recommended intensive outpatient treatment at two (2) service provider agencies. Mother resumed outpatient substance abuse treatment on July 6, 2018. Since that time, Mother has failed to attend thirty-one (31) of approximately forty-nine (49) scheduled sessions for various reported reasons or no reported reason at all. .... Mother failed to make progress toward goals of attending group sessions, completing assignments, attending 12 Step Meetings, and passing all drug screens.

23. During the current CHINS case, Mother tested positive for alcohol [seven times and] synthetic cannabinoids [three times]. Mother failed to submit to all drug screens as requested.

....

29. Mother and Father were unsuccessfully discharged from the first case management provider for lack of compliance.

30.  Between May 2017 and July 2018, Mother and Father were scheduled to participate in case management services twice per week.  Mother and Father failed to attend twenty-six (26) scheduled sessions.… Mother and Father argued during sessions. Mother and Father failed to provide verification of income for purposes of budgeting. Mother and Father lacked sufficient income to meet basic needs for food and other necessities. Mother and Father lacked a vehicle and relied on bus transportation or rides from friends.

31.  At that time, Mother and Father were renting and slept on a mattress, the electricity had just been turned back on in the home, and there was no furniture in the home.  Various clutter was observed in the home and the refrigerator was full of maggots.  Mother and Father were mostly unemployed with sporadic short-term work.… Parents were evicted reportedly because the police were dispatched to the home. The parents then began residing with a friend.

32.  Since July 17, 2018, case management sessions were reduced to once per week due to attendance issues.… The parents routinely bicker, Mother is consistently negative, and Mother can be prone to angry outbursts. Neither Mother nor Father has commenced parenting education due to ongoing crisis management involving basic necessities.

33.  At the time of the termination hearing, Mother and Father had made limited progress toward overarching goals to obtain housing, to obtain employment, to establish a sustainable budget, and to remain drug free.  Mother obtained employment at Denny's but was recently suspended for a week due to attendance issues.… The parents have never obtained housing and continuously report staying with an unnamed friend.

34. ….  The relationship between Parents is toxic.  Both

parents disclosed domestic violence including emotional and physical abuse.

35. The communication and relationship between the parents w[ere] the most concerning observation[s] during parenting time as the parents struggled to calm when arguments erupted. The level of progress made by Parents in managing the frustrations of their relationship was sporadic. Both parents rapidly escalate during heated moments with screaming, cursing, and throwing items causing a concern for Child's physical, mental, and emotional well-being.

….

38. CASA, Virginia Black, supports termination of parental rights and adoption in the best interests of Child. CASA noted Parents are loving and attentive during parenting time. However, Parents have never obtained appropriate housing, have limited employment, [an]d continue to lack transportation. Parents have acknowledged the need for treatment related to mental health and substance use issues but neither has invested in treatment to successfully address those issues. CASA has observed Parents demonstrate a pattern of minimal progress followed by regression over the course of the current CHINS case. Both Parents have disclosed not eating for an entire day and at times struggle to meet their own basic needs. Child is bonded with the foster family and the foster parents are willing to adopt Child.

Appealed Order at 3-7. Based on the findings, the trial court concluded that there is a reasonable probability that the conditions that precipitated Child's removal will not be remedied, that continuation of the parent-child relationships poses a threat to Child's well-being, that DCS has a satisfactory

plan for Child's care and treatment (adoption), and that termination is in Child's best interests.

[4] Mother appeals the termination order.[2] Additional facts will be provided as necessary.

## Discussion and Decision

[5] Mother challenges the sufficiency of the evidence supporting the trial court's termination order. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *E.M.*, 4 N.E.3d at 642. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted). Where, as here, the appellant does not specifically challenge any of the trial court's findings, they stand as proven, and we simply determine whether the unchallenged findings are sufficient to

---

[2] Father is not participating in this appeal.

support the judgment. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*; *see also McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (unchallenged findings are accepted as true).

[6] In *Bester*, our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

839 N.E.2d at 147 (citations, quotation marks, and alteration omitted).

[7] To obtain a termination of a parent-child relationship, DCS is required to establish in pertinent part:

> (A) that one (1) of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

> ….

> (B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[8] In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.* "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted). "[I]f the court finds that the allegations in a

[termination] petition … are true, the court *shall* terminate the parent-child relationship." Ind. Code § 31-35-2-8(a) (emphasis added).

[9] Mother does not challenge the trial court's conclusions regarding the reasonable probability of continued unremedied conditions, the threat to Child's well-being, or the satisfactory plan for Child's care and treatment. Rather, she limits her challenge to the trial court's conclusion that termination of the parent-child relationship is in Child's best interests. To determine what is in the best interests of a child, we must look at the totality of the circumstances. *In re A.W.*, 62 N.E.3d 1267, 1275 (Ind. Ct. App. 2016). Although not dispositive, permanency and stability are key considerations in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). "A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children." *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012) (quoting *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied*). Likewise, "the testimony of service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*.

[10] Here, the totality of the circumstances shows Mother to be in a constant battle to control and overcome her anger and substance abuse issues, abide by the law, and maintain a consistent pattern of positive, productive behavior. As a result of this ongoing battle, she has been unable to maintain stable employment and housing. In relation to parenting, we find her pattern of

frustrated, angry outbursts to be particularly concerning. Sadly, she has been unable to capitalize on her limited progress and has, in the words of CASA Virginia Black, "regressed in addressing substance use, mental health and financial issues." Ex. C2. Child is currently in a stable home and has bonded with her preadoptive foster parents. As CASA Black concluded in her report, "[Child], who will turn 2 next month, deserves a more stable home. CASA recommends termination of parental rights." *Id.*

[11] The totality of the circumstances supports the trial court's conclusion that termination is in Child's best interests. Mother has failed to meet her burden of demonstrating that the trial court clearly erred in terminating her relationship with Child. Accordingly, we affirm.

[12] Affirmed.

Baker, J., and Kirsch, J., concur.