## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 18 2020, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent–Child Relationship of T.W. (Minor Child)

and

J.W. (Mother),
*Appellant-Respondent,*

v.

Indiana Department of Child Services,
*Appellee-Petitioner.*

February 18, 2020

Court of Appeals Case No.
19A-JT-2246

Appeal from the Wabash Circuit Court

The Honorable Robert R. McCallen, III, Judge

Trial Court Cause No.
85C01-1903-JT-5

**Bradford, Chief Judge.**

# Case Summary

[1] J.W. ("Mother") and E.W. ("Father") are the biological parents of T.W. ("Child"). The Department of Child Services ("DCS") became involved with the family due to allegations of sexual abuse and educational neglect of Child. Mother refused to cooperate with DCS's investigation into the allegations of abuse and neglect and Child was subsequently removed from her care and adjudicated to be a Child in Need of Services ("CHINS"). Following the CHINS adjudication, Mother and Father were ordered to complete certain services, but failed to do so. Given their failure to complete services, DCS eventually petitioned to terminate their parental rights to Child. Following an evidentiary hearing, the juvenile court granted DCS's termination petition. On appeal, Mother contends that DCS failed to present sufficient evidence to support the termination of her parental rights.[1] We affirm.

# Facts and Procedural History

[2] Child was born on October 27, 2007. On May 15, 2017, DCS opened an assessment regarding educational neglect of Child. Mother refused to cooperate in regards to the assessment. On June 20, 2017, DCS received a

---

[1] Father does not participate in this appeal. As such, we will limit our discussion to facts relevant to the termination of Mother's parental rights to Child.

report regarding alleged sexual abuse of Child. DCS Family Case Manager ("FCM") Valerie Eiler initiated an investigation into the alleged abuse. Mother refused to cooperate with the investigation and failed to produce Child for a scheduled meeting at the DCS office. At some point, Child was removed from Mother's care and placed in foster care. DCS ultimately determined that the allegations of sexual abuse were unsubstantiated but that the allegations of educational neglect were substantiated.

[3] On June 22, 2017, DCS filed a petition alleging that Child was a CHINS. On December 4, 2017, the juvenile court adjudicated Child to be a CHINS on the basis of educational neglect. During the January 19, 2018 dispositional hearing, the juvenile court ordered Mother, *inter alia*, to undergo substance-abuse and parenting assessments, complete any services recommended by DCS, refrain from using illegal substances and alcohol, attend visitation with Child, and obey the law.

[4] During a December 7, 2018 case review hearing, the juvenile court noted that while Mother had visited Child, she had not complied with Child's case plan. The juvenile court noted that "[d]espite numerous opportunities, [Mother] has still failed to submit to a substance abuse assessment and parenting assessment as ordered by the Court. Even when summer visitation in the home was contingent on her participation, she failed to participate in the assessments." Ex. 12. The juvenile court again ordered Mother to complete the previously-ordered assessments and to submit to random drug testing.

[5]     On June 3, 2019, the permanency plan was changed to a concurrent plan that included both termination of parental rights and adoption. In changing the permanency plan, the juvenile court found that Mother had not complied with Child's case plan. Specifically, Mother, who had been incarcerated since March 10, 2019,[2] had not visited Child since March 2, 2019, and had failed to comply with her court-ordered services with the exception of visitation.

[6]     On March 19, 2019, DCS filed a petition to terminate Mother's parental rights to Child. At some point after DCS filed the termination petition, Mother, while still incarcerated, began participating in services, completing the previously-ordered assessments on June 17, 2019. The juvenile court conducted an evidentiary hearing on August 13, 2019. During this hearing, DCS presented evidence outlining Child's significant needs, which included a need for stability and permanency, and Mother's failure to fully engage in services aimed at helping her learn how to adequately provide for Child's needs. Mother presented evidence that she claimed demonstrated progress and a positive change in the circumstances that led to Child's continued removal from her care. Following conclusion of the evidence, the juvenile court took the matter under advisement. On August 27, 2019, the juvenile court issued an order terminating Mother's parental rights to Child.

---

[2] Mother was incarcerated after being charged with theft and burglary and alleged to be a habitual offender. She has since been convicted of Level 4 felony burglary and Class A misdemeanor theft and found to be a habitual offender. Mother faces a lengthy period of incarceration as a result of these convictions and her status as a habitual offender.

# Discussion and Decision

[7] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their parental responsibilities. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Parental rights, therefore, are not absolute and must be subordinated to the best interests of the children. *Id.* Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent–child relationship. *Id.*

[8] Mother contends that the evidence is insufficient to sustain the termination of her parental rights to Child. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

[9] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent–child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

[10] Mother claims that DCS failed to present sufficient evidence to prove by clear and convincing evidence:

> (B) that one (1) of the following is true:
>     (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>     (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>     (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child.
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

# I.  Indiana Code Section 31-35-2-4(b)(2)(B)

[11] It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find that one of the conditions

listed therein has been met. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where the juvenile court determines that one of the above-mentioned factors has been proven and there is sufficient evidence in the record supporting the juvenile court's determination, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other factors listed in Indiana Code section 31-34-2-4(b)(2)(B). *See In re S.P.H.*, 806 N.E.2d at 882.

[12] DCS does not allege that Child has been adjudicated CHINS on two separate occasions. As such, DCS had to prove either that (1) the conditions resulting in removal from or continued placement outside Mother's home will not be remedied or (2) the continuation of the parent–child relationship poses a threat to Child.

[13] The juvenile court determined that the evidence established a reasonable probability that the conditions that resulted in Child's removal and continued placement outside Mother's care would not be remedied. When making a determination as to whether the conditions leading to placement outside a parent's care are likely to be remedied, juvenile courts "should judge a parent's fitness at the time of the termination hearing, considering any change in conditions since the removal." *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007). "The trial court can also consider the parent's response to the services offered through the DCS." *Id.* "'A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will

change.'" *Id.* (quoting *In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999), *trans. denied*).

[14] In support of its determination that the conditions for placement outside Mother's care would not be remedied, the juvenile court noted that after Child was found to be a CHINS, Mother was ordered to refrain from using, consuming, manufacturing, trading, distributing, or selling any illegal controlled substance; refrain from consuming alcohol; obey the law; complete parenting and substance-abuse assessments and follow all recommendations; and attend all scheduled visits with Child. While Mother did attend scheduled visits with Child, she was otherwise largely, if not entirely, noncompliant with the ordered services. With respect to Child's ongoing placement outside Mother's care, the juvenile court found

> By [December 7, 2018], [Child's] behavior in his foster placement had worsened and on or about January 14, 2019, he was placed residentially at DAMAR Services.
>
> A permanency hearing was held on May 31, 2019.… [Child] was doing much better in his placement at DAMAR. DCS had arranged for [Mother] to obtain her substance abuse assessment while she was incarcerated, but she refused. Again [Mother's] participation in ordered services was virtually non-existent and [she had not] completed [her] required substance abuse and parenting assessments.
>
> ***
>
> [Mother] has been uncooperative from the beginning. Her attitude in Court reflects she has no intention of doing what she has been ordered to do. [Mother] and [Father's] relationship is

hot and cold. Despite having the ability to share a car to visit [Child] before he was placed at DAMAR, [Mother] was unwilling to do that.… [Mother] and [Father] are resistant to any change and unwilling to do what they need to do (i.e. obey the law, engage in assessments and services, cooperate with each other) for reunification to occur.

[Mother] acknowledged she has smoked marijuana since the dispositional order was entered.

[Mother] provided a myriad of reasons why she didn't do what was ordered for reunification to occur.
> * She was sick and hospitalized 4 days in June or July of 2018.
> * She didn't trust the DCS or Bowen Center.
> * She was offended that DCS asked her to take drug screens despite being ordered to do so.
> * She was incarcerated briefly, on June 29, 2019 [sic], and then re-incarcerated on March 10 of this year.

She has had ample time and opportunity to engage in services, as ordered. Her excuses don't justify her wholesale failure to engage in services beyond her exercise of supervised parenting time. She has only recently engaged in services and then only after being incarcerated. Even then, she declined the first substance abuse assessment offered to her while in jail and further declined to review her case plan in June of 2019. Her recent efforts are superficial and insincere.

Much of [Mother's] testimony was an effort to re-litigate the finding of CHINS. That ship sailed long ago. However, by doing so, she evidenced that she resents the finding of CHINS and has no intention of doing what she has been ordered to do.

***

> The Court finds, by clear and convincing evidence, that the allegations of the Petition are true, in that:
>
> ***
>
> b. There is a reasonable probability the conditions that resulted in his removal or his continued removal will never be remedied. In fact, it's a virtual[] certain[t]y[.]

Appellant's App. Vol. II pp. 57–59. Mother does not challenge these findings on appeal. As such, we accept the findings as true. *See In re S.S.*, 120 N.E.3d 605, 610 (Ind. Ct. App. 2019). We agree with the juvenile court's determination that these findings demonstrate a reasonable probability that the conditions resulting in Child's removal from or continued placement outside Mother's care will not be remedied.

[15] In challenging the sufficiency of the evidence to sustain the termination of her parental rights to Child, Mother blames her failure to consistently engage in services on her frustration with "DCS'[s] repeated requests" that she complete a substance-abuse assessment and drug testing, arguing that "drug testing wouldn't help her learn to be a better parent to Child." Appellant's Br. p. 22. Regardless of whether Mother believed she should have to participate in drug testing or complete a substance-abuse assessment, Mother was nevertheless ordered to do so following the determination that Child was a CHINS. Mother further argues that although she was incarcerated at the time of the evidentiary hearing, her incarceration "would eventually end" at which time she could "be reunified with Child." Appellant's Br. p. 23. Mother's arguments amount to

an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

## II. Indiana Code Section 31-35-2-4(b)(2)(C)

[16]   We are mindful that in considering whether termination of parental rights is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the juvenile court must subordinate the interests of the parents to those of the children involved. *Id.* "A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children." *Lang*, 861 N.E.2d at 373. Furthermore, this court has previously determined that the testimony of the case worker, guardian ad litem ("GAL"), or a CASA regarding a child's need for permanency supports a finding that termination is in the child's best interests. *Id.* at 374; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

[17]   With respect to the best interests of Child, the juvenile court found as follows:

> [Child] is doing better in his current placement.
>
> [Child] needs structure and stability. His parents can provide neither. They live chaotic lifestyles and [Mother] has frequent brushes with the law. Sadly, the Court believes that will never change.

> The evidence is clear and convincing that continuation of the parent-child relationship is not in [Child's] best interests and that doing so would be detrimental to his physical and/or mental well-being.

Appellant's App. Vol. II pp. 58–59.  The juvenile court's findings are supported by the record.

[18]  The record reveals that Child has significant needs and requires stability.  Child has been diagnosed with mild intellectual disability disorder and conduct disorder.  Emily Watson, Child's therapist at Damar, testified that stability and consistency are important to Child's treatment and progress.  FCM Gary Spratt testified that he believed that termination of Mother's parental rights was in Child's best interests, explaining:

> As numerous therapists and – and mental professionals have said earlier, [Child] needs a very stable environment, he needs both parents, he needs them to be involved with his services.  [Child], unlike most kids, has significant needs.  Um, those needs are not being met with his current situation.  He needs a family that is willing to and able to engage in those services so they can learn to parent him and he can learn to be cooperative with that and want to be cooperative.

Tr. pp. 165–66.  CASA Angela Dunn also testified that she believed that termination of Mother's parental rights was in Child's best interests, explaining that Child's behavioral issues have decreased and Child "seems to be more settled and happier" since his contact with Mother stopped.  Tr. p. 133.  She opined that contact with Mother was inhibiting and disrupting Child's progress.

The juvenile court's determination that termination of Mother's parental rights is in Child's best interests is supported by sufficient evidence.

## III. Indiana Code Section 31-35-2-4(b)(2)(D)

[19] We have previously concluded that "[f]or a plan to be 'satisfactory,' for purposes of the statute, it 'need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated.'" *Lang*, 861 N.E.2d at 374 (quoting *In re Termination of Parent–Child Relationship of D.D.*, 804 N.E.2d 258, 268 (Ind. Ct. App. 2004), *trans. denied*). "A DCS plan is satisfactory if the plan is to attempt to find suitable parents to adopt the children." *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014). "In other words, there need not be a guarantee that a suitable adoption will take place, only that DCS will attempt to find a suitable adoptive parent." *Id.* "Accordingly, a plan is not unsatisfactory if DCS has not identified a specific family to adopt the children." *Id.*

[20] In challenging the sufficiency of the evidence to prove that DCS has a satisfactory plan for Child's care and treatment, Mother "concedes that case law on this particular point is not particularly in her favor as this Court has previously noted that it is acceptable for DCS to show adoption being a satisfactory plan for the care and treatment of children such as Child." Appellant's Br. p. 26. Mother maintains, nonetheless, that in this case, a satisfactory plan for Child's care would be to maintain the status quo. We disagree.

[21] In determining that DCS has a satisfactory plan for Child's care and treatment, the juvenile court found

> DCS's plan for [Child] is adoption. Adoption is the only chance that [Child] will get to have the permanency he deserves now. Given [Child's] many needs, adoption will be difficult but not impossible. The DCS has many resources in placing hard to adopt children such as [Child]. Further, [Child's] current placement is better suited to prepare him for adulthood than any current alternatives.

Appellant's App. Vol. II p. 59. This finding is supported by the evidence. FCM Spratt testified that the plan for Child following termination of Mother's parental rights would be adoption and that DCS would work to locate "the perfect home for him. Somebody that meets his needs." Tr. p. 167. FCM Spratt further explained that in Child's case, DCS would

> be looking for a two-parent household, with no other children, that – and ideally, they would be within close proximity to [Damar] so that way they can participate in like – they were said earlier, the family therapy, family counseling, things like that, learning the skills that are needed for them to parent [Child].

Tr. p. 167. Applying our conclusion in *Lang* that "[a]ttempting to find suitable parents to adopt [Child] is clearly a satisfactory plan," 861 N.E.2d at 375, we conclude that DCS has a satisfactory plan for Child's care and treatment. Mother's contention otherwise amounts to an invitation to reweigh the evidence, which, again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

[22] The judgment of the juvenile court is affirmed.

Robb, J., and Altice, J., concur.