## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 24 2020, 8:51 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT:
A.D. (MOTHER)

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEY FOR APPELLANT:
J.C. (FATHER)

J. Clayton Miller
Richmond, Indiana

ATTORNEYS FOR APPELLEE:
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of: M.C., J.'V.C., and Ja.C. (Minor Children),

and

A.D. (Mother) and J.C. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

January 24, 2020

Court of Appeals Case No. 19A-JT-1391

Appeal from the Henry Circuit Court

The Honorable Bob A. Witham, Judge

Trial Court Cause No. 33C01-1902-JT-26 33C01-1902-JT-27 33C01-1902-JT-28

**Tavitas, Judge.**

# Case Summary

In this consolidated appeal, J.C. ("Father") and A.D. ("Mother") appeal the termination of their parental rights to M.C., Ja.C., and J.C. (the "Children"). We affirm.

# Issue

Father and Mother each raise several issues, which we consolidate and restate as whether the evidence is sufficient to support the termination of Father's and Mother's parental rights to the Children.

## Facts

Mother has five children: C.[1];  M.C., who was born in March 2009; Ja.C., who was born in January 2011; J.C., who was born in December 2013; and H.H.,[2] who was born in December 2017.  Father is the parent of M.C., Ja.C., and J.C.; C. and H.H. were not subjects of this termination of parental rights order.

Mother was involved in a prior DCS case "12 years ago" as a result of Mother's substance abuse.  Tr. Vol. II p. 48.  C. was "born with THC in her system," and Mother was abusing "[c]rack cocaine."  *Id.* at 47, 49.  C. was placed in a permanent guardianship with maternal grandmother as a result of Mother's substance abuse.

H.H. was born in December 2017 with marijuana and cocaine in her system.  As a result of Mother's substance abuse, the Henry County Department of Child Services ("DCS") removed the Children from Mother's care.  J.C. was placed in foster care, and Ja.C. and M.C. were placed with maternal grandmother.[3]  DCS filed petitions alleging that the Children were children in need of services ("CHINS").  Father, who was incarcerated at the time, and Mother admitted that the Children were CHINS.  In a dispositional order, the

---

[1] C.'s age is not reflected in the record.  At the time of the termination of parental rights hearing, she was approximately fourteen years old.

[2] Mother's Appellant's Brief and the trial court's order identify this child as A.H.; however, the remaining briefs and the record identify this child was H.H.  For simplicity, we will identify her as H.H.

[3] H.H.'s placement is not evident from the record.

trial court ordered Father, in part, to maintain contact with the family case manager ("FCM"). The trial court ordered Mother, in part, to complete a parenting assessment and a substance abuse assessment and to follow all recommendations; submit to random drug screens; attend visitations with the Children; and obey the law.

[6] According to Mother, her drugs of choice are "marijuana and cocaine." Tr. Vol. II p. 34. During the CHINS proceedings, Mother repeatedly tested positive for marijuana, methamphetamine, and cocaine. Although Mother was offered inpatient substance abuse treatment, she refused the inpatient treatment because it was "unfair" to her husband and she would lose her job. Tr. Vol. II p. 37. Mother has twice completed intensive outpatient treatment ("IOP"). At the termination of parental rights fact-finding hearing, Mother described herself as a "recovering addict," with a sobriety date of October 22, 2018. Tr. Vol. II p. 33.

[7] Mother has a significant criminal history. In 2008, Mother pleaded guilty to residential entry and received a suspended sentence. Mother, however, violated her probation and received a one-year sentence in the county jail. In 2008, Mother also pleaded guilty to trespass and received a suspended sentence. In 2014, Mother was convicted of possession of cocaine, was sentenced to eighteen months of probation, and was ordered to complete an IOP.

[8] During the pendency of the CHINS proceedings, Mother was convicted of robbery, a Level 5 felony. This conviction resulted from Mother stealing her

mother's vehicle and driving it to Anderson to obtain drugs. Mother was sentenced to four years in the Department of Correction ("DOC") with one year suspended to probation. Mother violated the conditions of her home detention when she tested positive on August 9, 2018, for marijuana, cocaine, methamphetamine, and amphetamine. On October 9, 2018, Mother also tested positive for marijuana and methamphetamine. Mother's home detention was revoked, and she was incarcerated. At the time of the termination hearing, Mother testified that she expected to be released in December 2019; however, her release could possibly be in September 2019. After her release, Mother will still have a year of probation to complete.

[9] Father has multiple criminal convictions, including a 2011 conviction for carrying a handgun without a license, a Class C felony, for which he was sentenced to four years in the DOC with two years suspended to probation and his executed sentence to be served on home detention. Father violated his home detention, and he was ordered to serve the remainder of his sentence in the DOC. His placement was later modified to the county jail. In 2012, Father was convicted of invasion of privacy. In 2014, Father was charged with possession of cocaine; resisting law enforcement; dealing in cocaine; and being a habitual substance offender. Father pleaded guilty to possession of cocaine, a Class B felony, and being a habitual substance offender. The trial court sentenced Father to nineteen years in the DOC. Father's current projected release date is October 2024. Although, according to Father, if he completes a specific program, he will be requesting a sentence modification. While

incarcerated, Father spent two and one-half years in segregation because he "got in trouble and it had something to do with somebody getting hurt." Tr. Vol. II p. 19.

[10] On February 15, 2019, DCS filed a petition to terminate Father's and Mother's parental rights to the Children. A hearing was held regarding the petition on May 14, 2019. The court-appointed special advocate ("CASA") testified that the Children need permanency and wished to place all three Children together to avoid disruption for the Children. The CASA preferred that a permanent guardianship be established for the Children in maternal grandmother's care. The CASA, however, also testified:

> Q  If permanent guardianship is not on the option table and it's not before the Court today so that's not a purpose today. Do you support termination of parental rights?
>
> A  If that's how we have to go to achieve permanency then yes.

Tr. Vol. II p. 66.

[11] The family case manager ("FCM") testified that adoption would be a more permanent and stable placement for the Children rather than a guardianship. The FCM also testified: "At this time the children cannot be placed together, due to the department needing to have a waiver." Tr. Vol. II p. 77. The nature of the "waiver" is unclear from the record. According to the FCM, DCS had "taken steps" to secure a waiver, but "from a timing perspective it hasn't happened yet." *Id.* The FCM also stated: "The department right now suggests

that [J.C.] be adopted by his current placement. He cannot be placed with his siblings because there has to be a waiver in place first." *Id.* at 78.

[12] On May 16, 2019, the trial court issued findings of fact and conclusions thereon terminating Father's and Mother's parental rights to the Children. Father and Mother now appeal.

## Analysis

[13] Father and Mother challenge the termination of their parental relationship with the Children. The Fourteenth Amendment to the United States Constitution protects the traditional rights of parents to establish a home and raise their children. *In re K.T.K. v. Indiana Dept. of Child Services, Dearborn County Office,* 989 N.E.2d 1225, 1230 (Ind. 2013). "[A] parent's interest in the upbringing of [his or her] child is 'perhaps the oldest of the fundamental liberty interests recognized by th[e] [c]ourt[s].'" *Id.* (quoting *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). We recognize that parental interests are not absolute and must be subordinated to the child's best interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs.'" *K.T.K.,* 989 N.E.2d at 1230 (quoting *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[14] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re C.G.,* 954 N.E.2d 910, 923 (Ind.

2011).  We consider only the evidence and reasonable inferences that are most favorable to the judgment.  *Id.*  We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses.  *Id.* (quoting Ind. Trial Rule 52(A)).

[15]     Pursuant to Indiana Code Section 31-35-2-8(c), "[t]he trial court shall enter findings of fact that support the entry of the conclusions required by subsections (a) and (b)" when granting a petition to terminate parental rights.[4]  Here, the trial court did enter findings of fact and conclusions thereon in granting DCS's petition to terminate Father's and Mother's parental rights.  When reviewing findings of fact and conclusions thereon entered in a case involving the termination of parental rights, we apply a two-tiered standard of review.  First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment.  *Id.*  We will set aside the trial court's judgment only if it is clearly erroneous.  *Id.*  A judgment is clearly

---

[4] Indiana Code Sections 31-35-2-8(a) and (b), governing termination of a parent-child relationship involving a delinquent child or CHINS, provide as follows:

   (a)  Except as provided in section 4.5(d) of this chapter, if the court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship.

   (b)  If the court does not find that the allegations in the petition are true, the court shall dismiss the petition.

erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[16] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016).

### A. Father's and Mother's Challenge to Findings

[17] Mother challenges the trial court's Finding No. 18, while both Mother and Father challenge the trial court's Finding No. 50 and Finding No. 51.

[18] Finding No. 18 provided: "DCS has offered a number of services to [Mother] to bring about reunification of the children with her, but she has failed to accept or make effective use of the services offered." Appellant's App. Vol. II p. 48. According to Mother, her ability to participate in services was affected by the lack of providers in her area; she sought outpatient treatment rather than inpatient substance abuse treatment; and she has participated in services offered during her incarceration. Mother's argument is merely a request that we reweigh the evidence, which we cannot do. DCS presented evidence that Mother refused to participate in inpatient substance abuse treatment despite previously participating in outpatient treatment twice and relapsing. Mother continued to test positive for marijuana, methamphetamine, and cocaine until her incarceration. The trial court's finding is not clearly erroneous.

[19] Finding No. 50 provides: "Continuation of the parent-child relationship between the three children and [Father] or [Mother] would disallow the children from establishing permanency of where and with whom they belong, extending for months or years their wait for a permanent home." Appellant's App. Vol. II p. 50. Finding No. 51 provides: "Continuation of the parent-child

relationship would subject these children to the tides of the criminal courts and each parent's addiction for permanency and long-term stability in determining by and among whom the children will receive daily care and nurture." *Id.*

Mother and Father argue that these findings conflict with the CASA's testimony. According to Mother and Father, permanency could have been established through a guardianship. Again, Mother's and Father's argument is merely a request that we reweigh the evidence, which we cannot do. Although the CASA testified that guardianship over the Children with maternal grandmother was her preference, CASA also testified that the Children need permanency. The CASA supported termination of parental rights if that was required "to achieve permanency . . . ." Tr. Vol. II p. 66. The trial court's findings are not clearly erroneous.

### B. *Remedy of Conditions Resulting in Removal*

Mother challenges the trial court's conclusion that there is "a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied."[5] I.C. § 31-

---

[5] Mother also argues that there was no reasonable probability that the continuation of the parent-child relationship posed a threat to the well-being of the Children. Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive. Consequently, the DCS was required to demonstrate by clear and convincing evidence of a reasonable probability that *either*: (1) the conditions that resulted in the Children's removal or the reasons for placement outside the home of the parents will not be remedied, or (2) the continuation of the parent-child relationship poses a threat to the well-being of the Children. *See, e.g.*, *Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 148 n.5 (Ind. 2005). The trial court here found a reasonable probability that the conditions that resulted in the Children's removal or reasons for placement outside the home of the parents will not be remedied, and there is sufficient evidence to support that conclusion. Accordingly, we do

35-2-4(b)(2). "In determining whether 'the conditions that resulted in the [Children's] removal . . . will not be remedied,' we 'engage in a two-step analysis.'" *In re E.M.,* 4 N.E.3d 636, 642-43 (Ind. 2014) (quoting *K.T.K.,* 989 N.E.2d at 1231). "First, we identify the conditions that led to removal; and second, we 'determine whether there is a reasonable probability that those conditions will not be remedied.'" *Id.* In analyzing this second step, the trial court judges the parent's fitness "as of the time of the termination proceeding, taking into consideration evidence of changed conditions." *Id.* (quoting *Bester,* 839 N.E.2d at 152). "We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination." *Id.* "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[22] On this issue, the trial court found:

> 5. There is a reasonable probability that the conditions that resulted in the children's removal will not be remedied as both mother and father have longstanding substance abuse problems.

---

not address whether the continuation of the parent-child relationship poses a threat to the well-being of the Children.

6. Further, criminal convictions and treatment have not had significant impact on the parents' history of relapse into substance abuse.

7. Finally, each parent's recurrent involvement with the criminal justice system leads the Court to lack significant confidence that the parent will, upon release, be sustain [sic] a life-style that is crime and substance free so that they are available to effectively parent these children.

Appellant's App. Vol. II p. 51.

[23] Mother argues that she has participated in services while incarcerated; that she is scheduled to be released from incarceration soon; and that the CASA recommended a permanent guardianship rather than termination of parental rights. We applaud Mother for her recent progress in maintaining sobriety and participating in services at the DOC. Mother, however, has a long history of substance abuse and repeated relapses.

[24] DCS presented evidence that the Children were removed from Mother's care due to Mother's substance abuse and that Mother's older daughter was also removed from her care several years ago and placed with maternal grandmother in a permanent guardianship due to Mother's substance abuse issue. Additionally, Mother has had several interactions with the criminal justice system that resulted in convictions. Mother continued to test positive for illegal substances up to her incarceration in October 2018. Ultimately, Mother's drug usage resulted in her current incarceration. Although Mother is scheduled to be released from incarceration soon, she must still complete a year of probation

and maintain her sobriety. Under these circumstances, the trial court's conclusion that there is a reasonable probability that the conditions that resulting in the Children's removal will not be remedied is not clearly erroneous.

### C. Children's Best Interests

[25] Mother argues that it is not in the Children's best interests to terminate her parental rights. In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. *Z.B. v. Indiana Dep't of Child Servs.*, 108 N.E.3d 895, 903 (Ind. Ct. App. 2018), *trans. denied*. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. *K.T.K.*, 989 N.E.2d at 1235. A trial court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.* Additionally, a child's need for permanency is a "central consideration" in determining the best interests of a child. *Id.*

[26] Mother bases her argument on the CASA's testimony and Mother's bond with the Children. The CASA testified that permanency was important for the Children. The CASA also was concerned with keeping all of the Children together. Although the CASA preferred that the Children all be placed with maternal grandmother in a permanent guardianship, the CASA supported termination of parental rights if that was required "to achieve permanency . . .

." Tr. Vol. II p. 66. The FCM testified: "At this time the children cannot be placed together, due to the department needing to have a waiver." *Id.* at 77. According to the FCM, DCS had "taken steps" to secure a waiver, but "from a timing perspective it hasn't happened yet." *Id.* The FCM also stated: "The department right now suggests that [J.C.] be adopted by his current placement. He cannot be placed with his siblings because there has to be a waiver in place first." *Id.* at 78. At the time of the termination of parental rights hearing, DCS had requested the waiver for J.C. to be placed with his siblings; the waiver, however, had not been obtained.[6]

[27] Mother essentially asks that we give more weight than the trial court gave to the CASA's preference for a guardianship of the Children. The trial court, however, weighed the evidence and determined that termination of parental rights and adoption was in the Children's best interest. Under our standard of review, we cannot reweigh the evidence. Under the circumstances here, we cannot say the trial court's conclusion that termination of parental rights is in the Children's best interest is clearly erroneous.

---

[6] We are concerned about the numerous unanswered questions presented by this record. Neither party presented any evidence regarding the nature of the waiver, why the Children were not placed together, or whether guardianship was considered in this case. We cannot speculate regarding evidence that was not developed during the fact-finding hearing or reweigh the evidence that was presented. We do, however, encourage DCS to find an appropriate plan to keep the Children together.

### *D. Adequate Plan*

[28] Finally, Father and Mother challenge the trial court's finding that there is a satisfactory plan for the care and treatment of the Children. Indiana courts have held that for a plan to be "'satisfactory'" for the purposes of the termination statute, it "'need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated.'" *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014) (quoting *Lang v. Starke Cnty. Office of Family and Children*, 861 N.E.2d 366, 375 (Ind. Ct. App. 2007), *trans. denied*), *trans. denied*.

[29] DCS is only required to offer a general sense of the plan for the Children after termination of Father's and Mother's parental rights. DCS's plan is for the Children to be adopted by "the current relative or kinship placement families," and adoption is a satisfactory plan. Appellant's App. Vol. II p. 52; *see, e.g., Lang*, 861 N.E.2d at 375 (holding that adoption and independent living are satisfactory plans). The trial court's finding that DCS had a satisfactory plan is not clearly erroneous.

## Conclusion

[30] The trial court's termination of Father's and Mother's parental rights is not clearly erroneous. We affirm.

[31] Affirmed.

Najam, J., and Vaidik, J., concur.